887 So.2d 109 (2004)
SUCCESSION OF Katherine Scherer Mahoney HALLIGAN
No. 2003 CA 1168.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
Thomas Scherer Halligan, Baton Rouge, for Plaintiff-Appellant in Proper Person.
David M. Hansen, Baton Rouge, for Defendant-Appellee Louisiana Department of Revenue.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
PARRO, J.
This appeal questions whether the entire death benefit of a non-qualified, tax-deferred, single-premium annuity, which is paid directly to a beneficiary named in the annuity following the death of the annuitant, falls within the estate of the decedent/annuitant and is subject to inheritance *110 tax. Thomas Halligan (Halligan) is the sole heir of his deceased mother, Katherine Scherer Mahoney Halligan, and is also the named beneficiary of the death benefit in a non-qualified, tax-deferred, single-premium annuity purchased by her during her lifetime. He appeals a judgment in her succession finding the entire death benefit  the purchase price plus the earnings portion  of the annuity was included in his mother's estate and was subject to inheritance tax in the amount of $1,890.16, plus legal interest. The judgment further declared, in response to Halligan's challenge, that the inheritance tax laws, as applied in this case, are not unconstitutional. After reviewing the legal issues presented in this appeal, all of which appear to be res nova,[1] we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On February 28, 2001, Halligan filed a petition for possession in an intestate succession without administration or, alternatively, for possible probate of a purported olographic testament without administration and for sending the legatee into possession of his mother's estate. In April 2002, he filed a detailed descriptive list, in which he enumerated and valued the assets and liabilities of the estate. The list did not include the annuity. In a separate paragraph, Halligan stated the following:
In addition, deceased, during her lifetime, had an annuity from which she collected nothing, but upon the condition of her death, it paid a death benefit to the named beneficiary, who happened to be Thomas Scherer Halligan, her only son. Thomas Scherer Halligan does not believe that this annuity should be included in the estate of the deceased, but it is mentioned here to allow the court to adjudicate same, since the Collector of Revenue may likely claim that inheritance tax is due and owning [sic] on the death benefit. The total amount of the death benefit was $23,199.70. It represents the purchase price of the annuity, which was $16,183.04, and the amount of the earnings or yield on the deceased's payment, which was the difference between the two, or $7,016.66.
In August 2002, Halligan filed a rule to determine the amount of inheritance tax due, if any, attaching a sample of the annuity contract purchased by his mother from Great Northern Insured Annuity Corporation (GNA).[2] He stated the Collector *111 of Revenue was claiming inheritance tax on the entire death benefit, which included the purchase price and all the interest that had accrued before the death benefit was paid. Halligan claimed this was incorrect and suggested that one of several alternative tax treatments was the correct method of computing the tax.
Halligan's first contention was that this annuity was the same as a life insurance policy; therefore, the payment of the death benefit directly to the named beneficiary was tantamount to a payment of life insurance proceeds and was not subject to inheritance tax. Second, he argued in the alternative that under the current statutory scheme, the payment of the earnings portion of the death benefit had to be simultaneously classified as "income" earnings to the beneficiary, taxable at his income tax rate to track federal tax law, and also classified as "inheritance" and subject to the inheritance tax. He claimed these were mutually exclusive positions, because if the earnings portion fell into his mother's estate and was subject to inheritance tax, the earnings portion should be classified as income of the decedent and taxed at her income tax rate; if the earnings portion did not fall within the estate and was taxable to him as income at his income tax rate, it was not subject to the inheritance tax. Third, he contended application of this statutory scheme, resulting in double taxation of the earnings portion of the death benefit, was unconstitutional.[3]
The Collector of Revenue countered that the annuity was a gift made in contemplation of death, and therefore fell within the estate and was subject to inheritance tax under LSA-R.S. 47:2401 and 2404. Concerning the double taxation issue, the Collector of Revenue's brief to the trial court "disposed of this issue" by stating, "[t]he value of this annuity in question is subject to the state inheritance tax but not the state income tax."[4] The Collector of Revenue further argued that Halligan bore the burden of proof concerning any exemption to the inheritance tax, and that he had failed to cite any law exempting the money paid under the annuity from the inheritance tax.
After considering the briefs, the evidence, and the arguments of both parties at a hearing, the district court determined "that the whole of the contested annuity was to be included within the succession and be subject to the inheritance tax" and that the statutory scheme did not violate the federal or state constitutions. Recognizing that the parties still had disagreements concerning the issues and that they reserved the right to appeal those issues, the court fixed the inheritance tax due in the amount of $1,890.16, plus legal interest, which was based on the inclusion of the entire death benefit as property of the estate. The court rendered a judgment accordingly, and this appeal followed.

DISCUSSION

Annuity/Life Insurance
An annuity contract is defined in LSA-R.S. 22:647(B)(2) as follows:

*112 The term "annuity contract" shall include any contract which:
(a) Is issued by a life insurance company licensed to provide the contract in the state in which it was issued at the time of issue.
(b) States on its face or anywhere within the terms of the contract that it is an "annuity" including but not limited to an immediate, deferred, fixed, equity indexed, or variable annuity, irrespective of current pay status or any other definition of "annuity" in Louisiana law.
(c) Provides the contract owner the ability to defer United States income taxes on any interest earned and not distributed to the owner.
(d) Transfers some risk of financial loss to the insurance company for financial consideration.
(e) Was approved as an annuity contract by the Department of Insurance of the state in which it was issued prior to issue.
The parties agree that the contract at issue in this case qualifies as an annuity under the above provisions.
Inheritance tax is mandated by LSA-R.S. 47:2401(A), which states:
There is hereby levied a tax upon all inheritances, legacies, and donations and gifts made in contemplation of death, except such as are hereinafter specifically exempted.
The exemptions are set out in LSA-R.S. 47:2402; none of them apply to this annuity, and Halligan does not contend that they do. Louisiana Revised Statute 47:2404(A) reiterates that, subject to the exemptions in LSA-R.S. 47:2402, the property to be used to measure the inheritance tax is "all property of every nature and kind" included in any inheritance, legacy, or donation or gift made in contemplation of death.
Halligan contends that he does not have to establish any exemption or exclusion, because the imposition of the inheritance tax starts with the detailed descriptive list, and there is no statute stating that annuity proceeds are to be included on the detailed descriptive list as property of the decedent's estate. However, the statutory scheme does not have to specify every conceivable type of property to put on the detailed descriptive list in order to have that property included. Rather, LSA-R.S. 47:2404(A) speaks in broader terms of "all property of every nature and kind" and "donation or gift made in contemplation of death." On this point, we agree with the Collector of Revenue that the designation of Halligan as the beneficiary to receive the annuity proceeds upon the death of the decedent/annuitant falls within that category and is a gift to him  not made during his mother's lifetime, but made in contemplation of and to take effect upon the event of her death. Therefore, the annuity falls within the broad categories of property upon which the inheritance tax is to be computed, unless Halligan can demonstrate that some exemption or exclusion applies to the annuity proceeds.
A specific exclusion for life insurance proceeds is found in LSA-R.S. 47:2404(C), which states that it excludes from the inheritance tax:
any proceeds receivable by any beneficiary, other than the estate of the decedent, under any life insurance policy, or any retirement or pension plan, trust, system, or policy. Retirement or pension plan, trust, system, or policy, as used in this Subsection, means and includes any contract, agreement, or arrangement qualified under Sections 401 and 408 of the Internal Revenue Code under which an annuity or other payment was payable to the decedent or which the decedent possessed the right *113 to receive, either alone or in conjunction with another, for his life. (emphasis added).
Halligan recognizes that, because the annuity involved in this case is not "qualified" under the named sections of the Internal Revenue Code, it does not fall within the second sentence of this exclusion. Nevertheless, Halligan assigns as error the trial court's failure to recognize that the death benefit from this type of annuity should be treated the same as life insurance proceeds, which are excluded from the imposition of inheritance tax.
It is well-settled in Louisiana that the proceeds of life insurance, if payable to a named beneficiary other than the estate of the insured, are not considered to be a part of the estate of the insured. They do not come into existence during his life, never belong to him, and pass to the beneficiary by virtue of the contractual agreement between the insured and the insurer. T.L. James & Co. v. Montgomery, 332 So.2d 834, 847 (La.1975). Our supreme court has clearly stated that life insurance is sui generis, distinctive both in its confection and in its effect, and has declined to extend its principles to any other types of dispositions. Id. at 845-46; Fowler v. Fowler, 03-0590 (La.12/12/03), 861 So.2d 181, 183-84.
In this regard, the supreme court has also noted that an examination of the authorities does not warrant the conclusion that an annuity contract is an insurance contract, because an annuity comprehends few of the elements of an insurance contract. Succession of Rabouin, 201 La. 227, 234-35, 9 So.2d 529, 531 (1942). Life insurance is desirable from an economic and social standpoint as a device to shift and distribute risk of loss from premature death. These elements of risk-shifting and risk-distributing are essential to a life insurance contract. Helvering v. Le Gierse, 312 U.S. 531, 539, 61 S.Ct. 646, 649, 85 L.Ed. 996 (1941). In contrast, annuity contracts are generally recognized as investments, rather than as insurance. T.L. James, 332 So.2d at 846; Helvering, 312 U.S. at 540, 61 S.Ct. at 650. In Rabouin, the distinction was further clarified as follows:
The reason why life insurance, if made payable to a beneficiary other than the estate of the insured or his heirs, executors or administrators, is not considered as a part of the estate of the insured ... is that the proceeds or avails of life insurance do not come into existence during the lifetime of the insured, and do not belong at any time to him, but pass by virtue of the contract directly from the insurer to the beneficiary named in the policy. That is not true of an annuity contract. In such a contract the payment to the beneficiary, if he or she survives the annuitant, is a payment of a fund which belonged to the annuitant during his lifetime.
Rabouin, 9 So.2d at 530.
The distinction between annuities and life insurance policies was reiterated by the Louisiana Supreme Court in Succession of Pedrick, 207 La. 640, 21 So.2d 859 (1945), in which the issue was whether inheritance tax was owed on the balance of an annuity contract after a portion of its value had been paid to the annuitant before death. The court reviewed its decision in Rabouin, concluding "it was specifically held that the funds formed a part of the estate of the annuitant." Pedrick, 21 So.2d at 860.
We pointed out in the Rabouin case the difference between an insurance contract and an annuity contract. We cited authorities from other jurisdictions holding that an annuity was subject to an estate tax and not exempt as insurance.

*114 A contract of the nature involved in this suit is an investment pure and simple. The fact that it is termed an annuity contract does not in any way change the character of the contract.
From our examination of the holdings of other jurisdictions, we find that the prevailing opinion is to the effect that the refund of a contract of this nature is considered a portion of the estate and subject to inheritance and estate tax. (Citations omitted).
Id. at 860. Finally, the court summarized:
We have therefore concluded that the refund involved herein is a part of the decedent's estate and therefore subject to the inheritance tax.
Id. at 861.[5]
In Jochum v. Estate of Favre, 313 So.2d 870 (La.App. 4th Cir.1975), the court disagreed with the position of the executrix, who wanted the proceeds of a pension or annuity treated the same as proceeds received by the named beneficiary of a life insurance policy, i.e., not included in the estate of the decedent. The court cited Rabouin, noting its distinction that the funds invested in an annuity constitute a thing owned by the decedent during his lifetime, rather than coming into being upon death, as do life insurance proceeds. Reversing the lower court, the court ordered that the annuity proceeds be listed on the detailed descriptive list as an asset of the succession.[6]Jochum, 313 So.2d at 871.
None of these cases precisely addresses the issue before us, as they do not interpret current statutes in the context of determining whether inheritance tax is due. Yet, the key factor distinguishing annuities from life insurance policies in these cases is that the funds invested in an annuity were owned by the annuitant when the contract was purchased and those funds earned interest before the annuitant's death, thus forming a part of the estate, whereas life insurance proceeds come into existence at the moment of death and were never owned by the decedent. Despite other differences in the law and facts of the cited cases, this key factor runs throughout the jurisprudence and remains true in the situation before us. Those instances in which the courts have drawn the distinction between annuities and life insurance policies support the trial court's decision in this case that the death benefits from an annuity are not the same as life insurance proceeds and, therefore, are not excluded from the decedent's estate. We note also, as did the trial court, that if the legislature had intended to exclude all annuity proceeds from the imposition of inheritance tax, it would not have *115 designated those particular annuities that are "qualified under Sections 401 and 408 of the Internal Revenue Code." See LSA-R.S. 47:2404(C). By making this designation, it appears the legislative intent was to limit the exclusion to those annuity proceeds only.
Halligan contends, however, that the legislative history of other applicable statutes demonstrates the legislature's intent to treat annuity death benefits the same as life insurance proceeds. In 1944, the legislature enacted Act 221, which stated that all proceeds of all policies of annuity insurance were to have and enjoy the same legal status as was accorded to the proceeds of life insurance policies under the existing laws. 1944 La. Acts, No. 221, § 1.[7] The enactment of Act 221 changed the law, eliminating the distinction drawn by the supreme court in the Rabouin case. Since then, as now, life insurance proceeds were not considered property of the estate and were not subject to inheritance tax, Halligan contends that Act 221 mandated that annuity proceeds were likewise not to be considered property of the estate and were not to be subject to inheritance tax. We believe Halligan is correct on this point; had this case, like the Lantz case, involved a decedent whose death occurred before the repeal of Act 221, we would have had to agree with Halligan's position. As previously mentioned, the Lantz court recognized that Act 221 had changed the law and, applying its provisions, determined that the death benefit of the annuity in that case did not fall into the estate of the annuitant, but was to be paid to the beneficiary named in the annuity contract. Lantz, 176 So.2d at 225.
However, Act 221 was repealed in 1948 and was not re-enacted in the same terms in the new, comprehensive Insurance Code.1948 La. Acts, No. 195, § 32.01. Yet Halligan contends that Section 14.37 of the new code continued to treat annuities like life insurance proceeds, stating, in pertinent part:
The lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy, or endowment policy or annuity contract, heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy or contract against the creditors and representatives of the insured and of the person effecting the policy or the contract or of the estate of either, and against the heirs and legatees of either such person saving the rights of forced heirs, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.
1948 La. Acts, No. 195, § 14.37. Halligan points out that this provision lives on  in substantially the same form and with the same effect for annuities  in current LSA-R.S. 22:647(B)(1), which states:
The lawful beneficiary, assignee, or payee, including the annuitant's estate, of an annuity contract, heretofore or hereafter effected, shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant or the person effecting the contract, or the estate of either, and against the heirs and legatees *116 of either such person, saving the rights of forced heirs, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.[8]
We disagree with Halligan's contentions on this point. Although he is correct that the 1948 provision of the Insurance Code is very similar to the current provisions of LSA-R.S. 22:647(A)(1) and (B)(1), when we compare these provisions to Act 221, it is obvious that the language of the Insurance Code was and is considerably narrower in scope and more detailed than the broadly worded and all-inclusive text of Act 221. Act 221 said that, for all purposes under the law, annuity proceeds were to be treated the same as life insurance proceeds. Louisiana Revised Statute 22:647 is much more particularized, as evidenced by its title, "Exemption of proceeds; life, endowment, annuity" (emphasis added). This is an exemption statute, the purpose of which is to shield proceeds of certain contracts from the claims of creditors of the decedent or the estate, other than forced heirs. Paragraph A provides an exemption for life insurance proceeds; Paragraph B provides the same exemption for annuity proceeds. But the fact that the exemption is the same for both life insurance and annuity proceeds does not mean that life insurance and annuity proceeds shall in every respect and for all purposes have and enjoy the same legal status, as was stated in Act 221. Had the legislature intended to continue the same legal status and treatment for life insurance and annuities beyond the repeal of Act 221, it knew how to do so and could have done so. The fact that it instead legislated a set of more narrow exemptions indicates that a change in the law was intended.
Furthermore, the "sui generis" treatment of life insurance proceeds, whereby they are paid directly to a named beneficiary and do not fall into the decedent's estate, is a jurisprudential exception that is not bestowed or codified by LSA-R.S. 22:647. Rather, that exception has been codified in LSA-R.S. 47:2404(C),[9] which does not except this non-qualified annuity from the general rule that all property receivable by a beneficiary is subject to inheritance tax. As the supreme court reiterated in the recent Fowler case, "life insurance proceeds enjoy a status not accorded to other property in Louisiana." Fowler, 861 So.2d at 183.
Additionally, as the trial court correctly determined, the Collector of Revenue does not stand as a creditor of the decedent/annuitant or the estate when imposing an inheritance tax. See LSA-R.S. 22:647(B)(1). The inheritance tax is a tax on the devolution of property at death; it is not a property tax on the property of the decedent, but is an excise or privilege tax imposed on the transfer of property of a decedent, made effective by his or her death. It is generally imposed on the exercise of the legal power to transmit property or on the right to receive the property under a will or intestacy laws, or by any deed, grant, or gift to become operative at or after death. 85 C.J.S. Taxation § 1783 (2001). In Louisiana, the tax is imposed on the right to take and receive the property, rather than on the right to give or bequeath it. Succession of Cotton, *117 172 La. 819, 826, 135 So. 368, 371 (1931). In State v. Succession of Brewer, 190 La. 810, 813, 182 So. 820, 820-21 (1938), the Louisiana Supreme Court reiterated this definition of the inheritance tax, and further stated:
This doctrine [from Succession of Cotton] is equally applicable in the instant case for the reason that the tax is upon the right to take and receive the inheritance. In other words, it is a tax on the privilege to inherit.
See also Succession of Lindsey, 179 So.2d 669, 671 (La.App. 2nd Cir.1965). Although measured by the value of the property transferred, the tax is not a property tax, but is imposed on "all inheritances, legacies, and donations and gifts made in contemplation of death." LSA-R.S. 47:2401 and 2404; see Succession of Henderson, 211 La. 707, 717, 30 So.2d 809, 812 (1947). Comparing these descriptions of the inheritance tax to the exemptions provided in LSA-R.S. 22:647(B), it is clear that the Collector of Revenue does not function as a creditor of the decedent/annuitant or the estate. Furthermore, the inheritance tax is not a debt of the beneficiary that is already existing when the annuity proceeds become available to him. Therefore, even if the Collector of Revenue is a creditor of the beneficiary vis-a-vis the inheritance tax itself, the debt or liability that is imposed by the Collector of Revenue for that purpose is not one exempted by the statute.
Accordingly, although LSA-R.S. 22:647(B)(1) provides certain exemptions for annuity proceeds that are similar to those provided for life insurance benefits under LSA-R.S. 22:647(A)(1), we do not find that these similarities mandate the conclusion that annuity contracts are to be treated the same as life insurance policies for all purposes. Nor do we find that any of the exemptions established by LSA-R.S. 22:647(B)(1) shield the proceeds of the annuity in this case from the inheritance tax. Neither our research nor Halligan's arguments have directed us to any other provisions that would exempt or exclude the annuity proceeds from the inheritance tax. Therefore, we agree with the trial court that the annuity proceeds in this case are not to be treated the same as life insurance proceeds and are subject to the inheritance tax.

Income Tax/Double Taxation/Constitutionality
In the event this court agreed that the annuity proceeds were properly included in the estate and were subject to the inheritance tax, Halligan's alternative argument is that under the taxing scheme, the earnings portion of the annuity is classified as "income" earnings to the beneficiary and taxed at his income tax rate,[10] and is also classified as "inheritance" to the beneficiary by virtue of being included in the estate before it passed to him and is taxed to him again as inheritance. He contests the computation of the income tax at his rate, rather than at the decedent's rate, and claims the statutory scheme results in double taxation and is unconstitutional.
In dealing with these issues, the trial court noted:

*118 The State pointed out that double taxation is impossible pursuant to Revised Statute 47:45, which provides that an inheritance is not subject to income tax.
* * *
With regard to the double taxation argument, this argument is not ripe because the State has not imposed income tax on the annuity. Therefore, the Court finds in favor of the State and against Mr. Halligan.
Halligan argues that the district court was misled by the Collector of Revenue's representations in briefs and oral arguments, in that the Collector of Revenue has, in fact, imposed and collected income tax from him at his income tax rate on the earnings portion of the annuity. In this regard, Halligan has filed a separate suit against the Collector, seeking a refund of income taxes attributable to the earnings portion of the annuity that were paid by him under protest.[11] While we recognize that there may be an attempted or actual collection of income tax from Halligan, that is a separate matter, distinct from the issue in this case. The matter before the district court in this succession proceeding was a "Rule to Determine Amount of Inheritance Tax Due." Although Halligan made the same arguments concerning double taxation in that proceeding, the issue of income tax was not properly before the district court in that proceeding and is not before this court in this appeal. This is a succession proceeding, and the issue was and is the imposition of a tax on the inheritance of the annuity purchased by the decedent. There is nothing in the statutory scheme or jurisprudence concerning the inheritance tax to suggest that the earnings portion of the annuity that was earned prior to the decedent's death should not be included as inheritance when it passes to the beneficiary or should be treated any differently than the purchase price. Regardless of the outcome of Halligan's arguments concerning the imposition of income tax on the earnings portion, that outcome will have no effect on the imposition or amount of inheritance tax. The issues concerning the computation and collection of income tax on the earnings portion of that annuity are issues to be handled in the other lawsuit. For this reason, we conclude the trial court was correct in denying Halligan the relief sought with respect to the income tax and double taxation issues. Also, since Halligan's challenge to the constitutionality of the statutory scheme is based entirely on "double taxation" due to the imposition and collection of income tax, we decline to address that issue.

CONCLUSION
For the foregoing reasons, the judgment of the district court setting the inheritance tax due at $1,890.16, plus legal interest, is affirmed. All costs of this appeal are assessed to Halligan.
AFFIRMED.
NOTES
[1] In Succession of Fakier, 509 So.2d 33, 35 (La.App. 1st Cir.1987), aff'd in part and rev'd in part, 541 So.2d 1372 (La.1988), this court stated that the annuities at issue "constituted death benefits and as such had the same practical effect as life insurance." However, while the supreme court affirmed this court's disposition concerning the annuities, it criticized this court's "analysis of the ... purported similarity of the annuities to life insurance" as unnecessary to that decision. Fakier, 541 So.2d at 1383. In concurring in the denial of a rehearing, Justice Calogero stated the supreme court specifically did not decide whether the annuities were succession assets that should have been included on the descriptive list, because the issue of whether annuity proceeds should be treated differently than life insurance proceeds was not properly before the court. Fakier, 541 So.2d at 1383-84. As the commentators observed, "Only a future decision can clarify this issue left unanswered by the Fakier court." Frederick William Swaim, Jr. and Kathryn Venturatos Lorio, Successions and Donations § 9.9, at 220, in 10 Louisiana Civil Law Treatise (1995). Apparently this opinion will be that "future decision," as our research has not revealed any more recent case addressing this issue in the inheritance tax context.
[2] In that contract, the death benefit was defined as the annuity value at the date of death plus interest until the date of payment. The annuity value was computed as the premium, plus interest, less withdrawals and applicable taxes. The contract further provided that if the owner died before the annuity date, the death benefit would be paid to the named beneficiary. The owner had the right to make withdrawals or to surrender, assign, or cancel the contract before the annuity date, could change the owner or beneficiary, and could make payment options for herself and for the beneficiary.
[3] In connection with this issue, Halligan had a copy of his rule served on the Louisiana Attorney General. See LSA-C.C.P. art. 1880; Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864.
[4] However, in briefs and oral arguments to this court, the Collector of Revenue took the position that both inheritance tax and income tax were due on the earnings portion of the death benefit.
[5] The Pedrick court noted, however, that the law had been changed by Act 221 of 1944, but Pedrick had died in 1942, and the legislation could not be given retroactive effect. The Second Circuit Court of Appeal distinguished Pedrick on this basis in Succession of Lantz, 176 So.2d 224 (La.App. 2nd Cir.), writ refused, 248 La. 372, 178 So.2d 659 (1965), a case in which the decedent died in 1948, while Act 221 of 1944 was still in effect. Applying its provisions, the court concluded that the proceeds of a life insurance policy that had been converted into an annuity by the decedent should go to the beneficiary and did not fall into the annuitant's succession. Noting that Act 221 had been repealed and replaced by provisions that eventually became the present Insurance Code, the court stated, "However, we are not called upon to decide what the law is today under the pertinent sections of that Code." Lantz, 176 So.2d at 225.
[6] We note, however, that the Jochum case did not involve the issue of inheritance tax, but only which assets were to be included in the decedent's estate for the purpose of ascertaining the disposable portion and the forced portion under the then-existing laws concerning forced heirship.
[7] The full text of Section 1 of Act 221 was:

Be it enacted by the Legislature of Louisiana, That all proceeds, avails and dividends of all policies of health and accident insurance, annuity insurance and endowment insurance, shall in every respect and for all purposes have and enjoy the same legal status as is now accorded to all proceeds, avails and dividends of policies of life (including fraternal and cooperative) insurance under the existing laws of this State.
[8] LSA-R.S. 22:647(A) has virtually the same language concerning the proceeds of life insurance policies.
[9] See also LSA-C.C. art. 1505(C), excluding proceeds of life insurance from the succession property in the calculation of the disposable portion.
[10] The applicable statutes concerning Louisiana income tax are in LSA-R.S. 47:21, et seq., particularly §§ 32, 42, 43, 44, and 45. Section 43(A)(1) provides the general rule that gross income does not include amounts received under a life insurance contract, whether in a single sum or otherwise, if such amounts are paid by reason of the death of the insured. In contrast, Section 44(A) states the general rule for annuities, which is that gross income does include any amount received as an annuity. Section 45 states that the value of property acquired by gift, bequest, devise, or inheritance shall not be included in gross income, but the income from such property shall be included in gross income.
[11] Halligan v. Bridges, Collector of Revenue and Sec'y, Louisiana Dep't of Revenue & Taxation, Docket No. 502,517, 19th Judicial District Court, Parish of East Baton Rouge.