McCLENDON; J.,
concurring in part and dissenting in part.'
Iff concur with the majority to the extent that it finds the plaintiffs’ claims to be premature and dismisses same without prejudice. However, to the extent that the majority finds that the plaintiffs' may have stated a cause of action for a future claim for reduction of the annuity and its proceeds, I disagree.
Louisiana Civil Code Article 1505(A) provides: *416 The annuity in this case was not an inter vivos donation as it belonged to the decedent, was revocable during his lifetime,' and the proceeds were payable to the beneficiaries only in the event- of his death. See Succession of Fakier, 541 So.2d 1372, 1383 (La.1988). Further, the annuity was not a donation mortis causa since “[a] disposition mortis causa may be made only in the form of a testament authorized by law.” See LSA-C.C. art. 1570. Accordingly, without a donation, there can be no right of reduction.
*415 To determine tjie reduction to which donations, either - inter vivos or mortis causa, are subject, an aggregate is formed of all property belonging to the donor or testator at the time of his death; to that is fictitiously added the property disposed of by donation inter vivos within three years of the date of the donor’s death, according to its value at the time of the donation.
*416 With regard to collation of annuities, the Louisiana Supreme Court in Fakier recognized that the annuities were not subject to actual eollation, but left unanswered the question of whether annuity proceeds are part of the succession |2or whether they are subject to fictitious collation. Given that the annuity does not qualify as a donation, there is no basis for fictitiously collating the annuity proceeds. Nevertheless, the inquiry does not end here. Having found that the annuity proceeds are not subject to being fictitiously collated, the next question which must be answered is whether the proceeds are part of the aggregate formed of the decedent’s property as set forth in LSA-C.C. art. 1505(A).
The legislature has specifically provided that life .insurance premiums and proceeds shall not be included in the calculation of the aggregate amount. LSAC.C. art. 1505(C).[1] It is also well-settled in Louisiana that proceeds of life insurance policies, if payable to a named beneficiary other than the estate of the insured, are not considered part of the estate of the insured. They do not come into existence during his life, never belong to him, and pass to the beneficiary by virtue of the contractual agreement between the insured and the insurer. In re Succession of Halligan, 03-1168 (La.App. 1 Cir. 9/17/04), 887 So.2d 109, 113, writ denied, 04-2619 (La.12/17/04), 888 So.2d 875 (citing T.L. James & Co. v. Montgomery, 332 So.2d 834, 847 (La.1975)).[2]
Insurance is a device to shift and distribute risk of loss from premature death, whereas annuity contracts are generally recognized as investments. Halligan, 887 So.2d at 113, While life insurance proceeds do not come into existence during the lifetime of the insured and do not belong to him at any time, that is not true of an annuity contract, where the payment to the beneficiary, if he or she survives the annuitant, is a payment of a fund that belonged to the annuitant during his lifetime. Succession of Rabouin, 201 La. 227, 231-32, 9 So.2d 529, 530 (1942); Halligan, 887 So.2d at 113. Annuity policies, by their very nature, allow the tunneling of existing assets to non-forced heirs, after death, thereby contradicting the longstanding principles of forced |aheirship. Annuities lend themselves more easily to the deprivation of the rights of forced heirs by changing the character of an in-hand asset.
With regard to annuities, LSA-R.S. 22:912(B)(1) contains the language, “saving the rights of forced heirs.” However, in the context of collation, the legislative intent as to whether annuities should be treated differently than life insurance premiums and proceeds and, if so, how they should be categorized is unclear.
*417 If compelled to answer this question today, I would agree with the majority, in part, that in order to give meaning to the phrase “saving the rights of forced heirs,” a cause of action may exist to add the value of the annuity at the time of death to the mass of the estate, solely to determine the legitime.
Although the legislature clearly intended to protect the rights of forced heirs, the extent of said protection is ambiguous at best and should be addressed by the legislature given the significant policy considerations involved.[3] Issues that should be considered include whether the rights preserved be limited to a calculation of the legitime or whether the annuity proceeds should be treated as a donation, either inter vivos or mortis causa, and therefore subject to reduction. These are complex and problematic issues that must be resolved. However, given the posture of this case, they need not be determined at this time.

. Louisiana Civil Code Article 1505(C) provides that "[n] either the premiums paid for insurance on the life of the donor nor the proceeds paid pursuant to such coverage shall be included” in the calculation of the aggregate amount.

. While Halligan concerned inheritance taxes, I find its comparison of life insurance policies and annuity policies informative.

. An annuity such as this one, where the annuity belonged to the decedent until the time of death, at which point it transferred to the named beneficiaries, would seem to be most appropriately characterized as a donation mortis causa, were it not lacking testamentary form. In contrast, an annuity purchased solely for the benefit of third-parties during the lifetime' of the decedent, might be a valid inter vivos donation. These are some of the issues presented in determining the proper classification of annuities.