WHIPPLE, C.J.
|2This is an appeal filed on behalf of two minor children from a judgment of the trial court sustaining the defendants’ exception of no cause of action and dismissing the children’s claims asserting an interest in an annuity policy owned by their deceased father. For the following reasons, we reverse the judgment insofar as it sustained defendants’ Shona Pratt and Hi-roji Pratt’s (hereinafter collectively referred to as “the Pratts”) objection of no cause of action. We render judgment maintaining the Pratt defendants’ exception of prematurity, and we affirm the judgment of dismissal, as amended to reflect that the dismissal of plaintiffs’ claims against the Pratts is without prejudice. We further vacate the judgment insofar as it dismissed plaintiffs’ claims against the defendant Western National Life Insurance Company (“Western National”) and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

Gerónimo Ji Jaga, a/k/a Elmer Pratt (“the decedent”), died on June 3, 2011, in Tanzania, Africa. On November 28, 2011, a joint petition to open his succession was-filed by Shona Pratt, Nikki Michaux, Hiro-ji.Pratt, and Jojuyounghi (“Joju”) Cleaver in the Sixteenth Judicial District Court for the Parish of St. Mary. The petition alleged that jurisdiction in the Sixteenth Judicial District Court was proper because the decedent left property within this jurisdiction. Additionally, the petition alleged that the decedent fathered five children prior to his death, namely: (1) Nikki Michaux, born on July 20, 1970; (2) Hiroji Pratt (date of birth not specified), born during the decedent’s marriage to Linda Session, from whom he was diyorced in 1995; (3) Shona Pratt (date of birth not specified), also born during the decedent’s marriage to Linda Session; (4) Kayode Ji Jaga (date of birth not specified), born after the decedent’s divorce in 1995 and while the decedent was married to Joju Cleaver; and (5) Tkumsah Gerónimo Jaga, born on February 11, 2010.
|RSeparate and apart from the succession proceedings, on December 6, 2012, Joju Cleaver, as surviving spouse of the decedent and.as natural tutrix for the minor child, Kayode Ji Jaga, initiated the instant proceedings by filing a petition in the Nineteenth Judicial District Court for the Parish of East Baton Rouge Parish, titled “Petition for Legitime and for Marital Por *409 tion,” directly against Western National as the named defendant.[1] In pertinent part, Joju alleged in her petition that the decedent had purchased an annuity from American General Annuity, later named as Western National, from proceeds he received from a civil rights lawsuit.[2] The petition further alleged that although Kay-ode is a “forced heir,” he is not a named beneficiary of the annuity nor has he received anything as a result of his father’s death. Rather, the decedent’s two older children, Shona Pratt and Hiroji Pratt, were purportedly the named beneficiaries of the annuity. Accordingly, the petition alleged that as a forced heir, Kayode was entitled to receive his legitime, and, in calculation of the legitime, he was entitled to demand collation of any gifts which impinge on the legitime. On these bases, the petition prayed for judgment against Western National “for Kayode’s legi-time.” [3]
In response, Western National filed an exception of nonjoinder of a necessary party, alleging that Shona Pratt and Hiroji Pratt must be joined in the action, as they are the named beneficiaries of the annuity. Joju thereafter filed an amended petition, naming Shona Pratt and Hiroji Pratt as additional defendants. In response, the Pratts filed peremptory exceptions of no cause of action and nonjoinder of a party, dilatory | exceptions of prematurity and lack of procedural capacity, and a declina-tory exception of lack of personal jurisdiction.
Prior to a hearing on these exceptions, Laila Minja as natural tutrix for the minor child, Tkumsah Gerónimo Jaga, filed a petition to intervene, alleging that Tkumsah was also a forced heir of the decedent.[4] The petition further alleged that, pursuant to LSA-R.S. 22:912(B), beneficiary designations for annuities are limited in that beneficiary designations may not transfer ownership rights reserved for forced heirs. In the alternative, Minja’s petition alleged that the beneficiary designations in the decedent’s annuity impinged on Tkumsah’s legitime.
In response to Tkumsah’s petition to intervene, the Pratts filed the same objections as previously filed regarding Kay-ode’s petition,- namely, exceptions raising the objections of no cause of action and nonjoinder of a party, prematurity and lack of procedural capacity, and lack of personal jurisdiction. A hearing on all of the Pratts’ exceptions was conducted on September. 16, 2013. After hearing argument from counsel and taking the matter under advisement, the trial court sustained the Pratts’ exception of no cause of action, pretermitted the.other exceptions as moot, and dismissed plaintiffs’ claims with prejudice.[5]
*410 | fiKayocle Ji Jaga and Tkumsah .Geróni-mo Jaga, through their respective tutors, now appeal the judgment sustaining the exception of no cause of action.

DISCUSSION

A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness .of the well-pleaded facts, the plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law, City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, 756. Therefore, the court reviews the petition and accepts the well-pleaded allegations of fact as true, and the issue at trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to any relief sought. See Ferrington v. Louisiana Bd. of Parole, 2003-2093 (La.App. 1st Cir.6/25/04), 886 So.2d 455, 458, writ denied, 2004-2555 (La.6/24/05), 904 So.2d 741. One of the primary differences between the exceptions of no cause of action and no right of action lies in the fact that a frequent focus in an exception of no cause of action is on whether the law provides a remedy against a particular defendant, while the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit. Robertson v. Sun Life Financial, 2009-2275 (La.App. 1st Cir.6/11/10), 40 So.3d 507, 511. Generally, no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931.
Louisiana Revised Statute 22:912, governing the exemption of annuity proceeds from claims of creditors and others, contains a specific provision for claims of forced heirs. Specifically, LSA-R.S. 22:912(B)(1) states:
The lawful beneficiary, assignee, or payee, including the annuitant’s estate, of an annuity contract shall be entitled to the proceeds, and avails of the contract against the creditors and representatives of the annuitant or the person effecting the contract, or |fithe estate of either, and against the heirs and legatees of either person, saving the rights of forced heirs, and the proceeds and avails shall also be exempt from all liability for any debt of the beneficiary, payee, or assignee or estafé, existing at the time the proceeds or avails are made available for his own use. [Emphasis added.]
Citing LSA-R.S. 22:912(B)(1), plaintiffs contend that the trial court erred *411 in sustaining the exception of no cause of action. Plaintiffs first contend that LSA-R.S. 22:912(B)(1) provides a remedy to forced heirs seeking to make a claim against an annuity, thus giving them a direct right of reduction against the assets of the annuity in order to satisfy .their legitime, as they are undisputedly forced heirs. They further assert that if LSA-R.S. 22:912(B)(1) does not grant forced heirs any rights to the proceeds of an annuity, there is no reason for the statute. They also allege that a reasonable inference from the language of the statute is that a forced heir can make a claim on such assets, akin to those held in a bank or an investment account.
Alternatively, plaintiffs contend that the granting of the exception of no cause of action was improper, as the annuity is subject to their claim for “fictitious collation.” Specifically, Kayode alleges in his petition that: “In the calculation of the legitime, the forced heir may demand collation of any gifts which impinge on the legitime pursuant, .to [LSA-C.C.] Articles 1504 and 1508 which is hereby demanded.” Relying in part on Succession of Fakier, 541 So.2d 1372 (La.1988), the Pratts counter that the plaintiffs have no cognizable claim or cause of action for reduction or for “fictitious collation” because the annuity is neither a donation inter vivos made within three (3) years of the death of the decedent nor a donation mortis causa.
In Succession of Fakier, after providing an in-depth discussion of the distinction between “actual collation” and “fictitious collation,” the Supreme Court found that annuities are not subject to “actual collation” because they are not inter vivos donations. Succession of Fakier, 541 So.2d at 1383. However, the Supreme Court specifically noted that it was not ruling on “the issue of whether the value of |7the annuities should be fictitiously collated for the purpose of.calculating the active mass of the succession and the corresponding amount of the legitime under LSA-C.C. art.. 1505.” Succession of Fakier, 541 So.2d at 1374. '
Forced heirs have a right to receive a certain percentage of the decedent’s estate, known as the forced portion or the “legitime,” pursuant to LSA-C.C. arts. 1493 et seq.[6] Depending on the number of forced heirs, the amount of the legitime will be either one-fourth or one-half of the decedent’s estate. LSA-C.C. art. 1495. The remaining portion of the decedent’s estate is referred to as the “disposable portion.” In order to determine the “disposable portion” of the estate, the mass of the' succession ■ must be calculated, pursuant to LSA-C.C. art. 1505(A), which provides: ’ '
Art. 1505. Calculation of disposable portion on mass of succession
A. To determine the reduction to which the donations, either inter vivos or mor-tis causa, are subject, an aggregate is formed of all property belonging to the donor or testator at the time of his death; to that, is fictitiously added the property disposed of. hy donation inter vivos within three years of the date of the donor’s death, according to its value at the time of the donation.
After the- active mass of the succession is determined and the disposable portion,, is calculated,, donations mortis causa thereafter may be reduced to satisfy the forced heirs’ legitime. . LSA-C.C. art. 1507. Further, if the succession assets are not sufficient to satisfy the legitime, the forced heirs may then bring an action for reduction against donees of any inter vivos *412 donations made within three years of the decedent’s death. LSA-C.C. art. 1508.
Forced heirs also have a right to receive an equal share of the decedent’s estate as that received by other heirs, pursuant to LSA-C.C. art. 1227 et seq.[7] The starting | ¿point for any analysis of actual collation is LSA-C.C. art. 1227. Succession of Fakier, 541 So.2d at 1376. Louisiana Civil Code article 1227 defines “collation,” ie., “actual collation,” as the supposed or real return to the mass of the succession which an heir makes of property that he received in advance of his share or otherwise, in order that such property may be divided together with other effects of the succession. While historically, “actual collation” was a right that all direct descendants of the deceased had, the right to demand “actual collation” is now limited to forced heirs only. LSA-C.C. art. 1235, Revision Comment-1996(a). However, all children and grandchildren coming to the succession, regardless of age or capacity, are subject to “actual collation” demands by a forced heir. LSA-C.C. art. 1228. Moreover, while donations both mortis causa and inter vivos may be subject to a claim for reduction where a forced heir’s legi-time has been impinged, as the Supreme Court has recognized, only donations inter vivos, ave subject to á forced heir’s claim for “actual collation.” Succession of Fakier, 541 So.2d at 1383.
Pursuant to Succession of Fakier, the trial court’s decision to sustain the Pratts’ exception of no cause of action would be correct to the extent that plaintiffs alleged that they were entitled to “actual collation” of the annuity proceeds in order to fulfill the legitime. However, based on our examination of plaintiffs’ petitions in their entirety, it is apparent that, in part, plaintiffs are seeking to include the value of the annuity in the calculation of the active mass of the succession for purposes of LSA-C.C. art. 1505(A). Thus, the Pratts had the burden of showing that an “insurmountable bar” exists to including the amount of the annuity in the calculation of the active mass' of the succession for purposes of LSA-C.C. art. 1505. See Pierrotti v. Johnson, 2011-1317 (La.App. 1st Cir.3/19/12), 91 So.3d 1056, 1062 (“An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief.”); Foti v. Holliday, 2009-0093 (La.10/30/09), 27 So.3d 813, 817 (“The burden of demonstrating that a petition fails to state a cause of action is upon the mover.”)
Although Succession of Fattier unequivocally establishes that annuities are not subject to “actual collation,” the court in Fattier “expressly note[d]” that it was “not passing] upon the issue of whether the value of the annuities should be fictitiously collated for the purpose of calculating the active mass of the succession and the corresponding amount of the legitime under LSA-C.C. art. 1505.” Succession of Fatkier, 541 So.2d at 1374. Here, the parties do not cite, nor have we found, any statutory or jurisprudential authority unequivocally establishing that annuities are exempt from the calculation of the succession mass for purposes of LSA-C.C. art. 1505. Moreover, we note that while LSA-C.C. art. 1505(C) and (D) state that life insurance premiums and proceeds and certain employment-related deferred compensation plans should not be included in the calculation of the succession mass, annui *413 ties are not listed as being exempt from this calculation.[8]
This court is required to give effect to the pronouncements of the legislature, even when the law is less than clear or where there is no clear expression of how one provision is to be interpreted in light of other provisions. In analyzing this case, and in giving effect to the rights granted forced heirs by LSA-R.S. 22:912(B)(1), it is clear that there is no legislative or statutory remedy that fits squarely under the other provisions of law addressing this subject matter. Accordingly, after thorough and lengthy analysis and extensive briefing by the parties, and giving effect to the rights granted to forced heirs by LSA-R.S. 22:912(B)(1), we conclude that insofar as | ^plaintiffs’ petitions demand that the value of the annuity be included in the calculation of the succession mass, the trial court erred in sustaining the exception of no cause of action and dismissing their claims with prejudice.
However, to the extent that plaintiffs are asserting a direct cause of action for “reduction” of the annuity against the Pratts, we agree with the Pratts that any such claim would, at this time, be certainly premature in these proceedings.[9] Likewise, determining whether plaintiffs have a valid cause of action for “reduction” directly against the Pratts is premature at this time.[10] To prove a claim for reduction of a donation, it is necessary to prove that there has been an impingement on the legitime of the forced heirs, ie., that the value of the donations, whether inter vivos or mortis causa, made by the decedent have exceeded the value of the disposable portion of the decedent’s estate. Clearly, such a determination requires a calculation of the disposable portion, which in turn can be made only after a calculation of the active mass of the succession under LSA-C.C. art. 1505. Succession of Riggio, 468 So.2d 1279, 1290 (La.App. 1st Cir.), writ denied, 472 So.2d 38 (La.1985). While the allegations of plaintiffs’ petitions must be taken as true for purposes of determining whether they disclose a claim for which relief can be granted, there is no allegation therein that *414 the active mass of the succession has been determined. Accordingly, there has been no determination that plaintiffs’ legitime has been impinged. Thus, |nwe conclude that while plaintiffs may have a cause of action for reduction regarding the annuity and its proceeds in the future, these claims are premature at this time.[11]
Moreover, in finding merit to the Pratts’ exception of prematurity, we note that plaintiffs have filed pleadings in the ongoing succession proceeding seeking identical relief to that which is sought in this suit. The record reflects that a traversal to the descriptive list was filed by Joju Cleaver, as natural tutrix for Kayode in the related succession, alleging that the decedent’s annuity with American General “for' over a million dollars” must be included on the detailed descriptive list to use in calculating the legitime of the two forced héirs. The record further reflects that Tkumsah has likewise filed a “petition to assert forced heir rights” in the succession proceeding, alleging that the annuity proceeds at issue are governed by LSA-R.S. 22:912(B), subjecting the payment of any proceeds to any beneficiary to the rights of forced heirs, and, further, that to the extent that the beneficiary designations impinge on his rights as a forced heir, he has a right of reduction against these particular beneficiary designations. The instant record likewise shows that the preliminary issue of whether Tkumsah should be recognized as an heir to the decedent also has been raised in the succession proceeding.
■ Because plaintiffs have raised these preliminary and identical issues in the related pending succession action, as initiated by their joint petition to open the succession, there is a possibility of inconsistent opinions as well as the possibility that the need for review herein could be mooted by further action of the trial court where the succession is pending. Accordingly, eon-sidering the record before us, and pursuant to our authority under LSA-C.C.P. art. 2164 to render whatever judgment is just, legal, and proper upon the record on appeal, we agree that plaintiffs’ claims I ^herein should be dismissed, but on the basis of prematurity. Moreover, contrary ⅛° the ruling of the trial court, the dismissal of plaintiffs’ claims shall be without prejudice.
In sum, we conclude that the trial court erred in sustaining the exception of no cause of action insofar as plaintiffs have stated a cause of action for the annuity to be included in the active mass of the succession for purposes of LSA-C.C. art. 1505. However, to the extent that plaintiffs are asserting a cause of action for “reduction” of the annuity proceeds directly against the Pratts, such, potential claims are premature as there has been no calculation of the succession mass. Accordingly, plaintiffs can not presently establish that they are entitled to a reduction due to an impingement on their legitime. Thus, a dismissal .of plaintiffs’ claims without prejudice is appropriate. Moreover, to the extent that the judgment dismissed plaintiffs’ claims against Western National, with prejudice, the trial court’s judgment must be vacated.
CONCLUSION
For the above and foregoing reasons, based on our finding that the petitions at a minimum disclose a cause of action for the value of the annuity to be included in the active mass of the succession for purposes *415 of LSA-C.C. art. 1505, we vacate the August 26, 2014 judgment of the trial court insofar as it sustained Shona Pratt and. Hiroji Pratt’s exception of no cause of action and dismissed Kayode Ji Jaga’s and Tkumsah Gerónimo Jaga’s claims - with prejudice. However, judgment is hereby rendered maintaining the Pratts’ dilatory exception of prematurity and dismissing plaintiffs’ claims against the Pratts without prejudice. Further, the judgment of the | atrial court' is vacated insofar as it dismissed with-prejudice the plaintiffs’ claims against-defendant; Western National, and the matter is remanded for further proceedings. Costs of this appeal are assessed equally to the parties.
JUDGMENT GRANTING EXCEPTION OF NO CAUSE OF ACTION REVERSED IN PART AND VACATED IN PART; JUDGMENT RENDERED MAINTAINING EXCEPTION OF PREMATURITY; JUDGMENT OF DISMISSAL AFFIRMED, AS AMENDED; AND REMANDED.
PETTIGREW, J., concurs with the results only, and assigns reasons.
. McCLENDON J., concurs in part and dissent in part and assigns reasons.
HIGGINBOTHAM, J., concurs.

. The parties do not dispute that the succession proceeding is still ongoing.

. Effective January 1, 2013, American General Life Insurance Company became the successor in interest to Western National. For purposes of this appeal, this entity will be referred to as "Western National.”

. At the outset, we note that Joju’s claim for her marital portion is not before this court. The judgment of the trial court addresses only the claims of the minor children, Kayode Ji Jaga and Tkumsah Gerónimo Jaga.

. It is unclear whether Tkumsah's correct name is Tkumsah Ji Jaga or Tkumsah Geróni-mo Jaga. For purposes of this appeal, we will refer to him as Tkumsah Gerónimo Jaga as this is how he is most commonly referred to in the record.

, A judgment reflecting this ruling was signed by the trial court on December 16, 2013. Upon the lodging of this appeal, this court issued a rule to show cause because the judgment lacked the appropriate decretal language required to maintain the appeal as an appeal of a final judgment. An amended judgment, signed on August 26, 2014, was *410 then submitted to this court, which states that “the exception of no cause of action filed by defendants, SHONA SATOMI PRATT and HI-ROJI PRATT, is sustained, and the claims of Kayode Ji Jaga and Tkumsah Gerónimo Jaga are dismissed, with prejudice, at their cost.” Pursuant to an order of this court, the record has been supplemented with this amended judgment. Accordingly, the appeal is maintained as an appeal from a final, appealable judgment.
We further note that the judgment appears to dismiss Kayode Ji Jaga’s and Tkumsah Gerónimo Jaga’s claims against all defendants, including plaintiffs’ claims against Western National. The record before us reflects that the only exception filed by Western National was a peremptory exception raising the objection of nonjoinder of a necessary party, which was resolved or rendered moot by the filing of an amended petition. Moreover, while Western National purported in its brief in support of the exception that it reserved its right to invoke a concursus proceeding for the disputed annuity proceeds, there is nothing before us to indicate that a concursus was ever invoked. Accordingly, because Western National did not seek a dismissal of plaintiffs’ claims against it on an exception of no cause of action (or otherwise), the trial court erred in dismissing plaintiffs’ claims against this defendant. Thus, plaintiffs’ claims against Western National are not disposed of or addressed in this appeal.

. These articles are found in Book III, Title II "Donations,” Chapter 3 “The Disposable Portion and Its Reduction In Case of Excess,” of the Louisiana Civil Code.

. These articles are found in Book III, Title I "Of Successions,” Chapter 11 "Of Collations,” of the Louisiana Civil Code.

. As noted by the Supreme Court in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834, 845 (La.1975), "[The] court has refused to extend the rationale of the cases dealing with life insurance to other problems where the conflict is between the urge to bring about freedom of disposition and the fundamental and elementary principles of forced heirship and the community property system embodied in our Constitution and Civil Code.” Further stating, “Considering Louisiana’s long and steadfast commitment to the principles of forced heirship and community property, [the] Court is unable ... to adopt any theory or decision which would erode those principles, and, under certain circumstances, nullify them.” Montgomery, 332 So.2d at 846.

. Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. Such an objection is intended to retard the progress of the action rather than to defeat it. LSA-C.C.P. art. 923; Deutsche Bank National Trust Company v. Thomas, 2010-1453 (La.App. 1st Cir.2/11/11), 57 So.3d 1185, 1187. An action is premature if it is brought before the right to enforce the claim sued on has accrued. LSA-C.C.P. art. 423. The objection of prematurity raises the issue of whether the judicial cause of action has yet to come into existence because some prerequisite condition has not been fulfilled. Bridges v. Smith, 2001-2166 (La.App. 1st Cir.9/27/02), 832 So.2d 307, 310, writ denied, 2002-2951 (La.2/14/03), 836 So.2d 121.

.Louisiana Civil Code article 1504 provides that "an action” for reduction of excessive donations may be brought only after the death of the donor, and then only by a forced heir, the heirs or legatees of a forced heir, or an assignee of any of them who has an express conventional assignment, made after the death of the decedent, of the right to bring the action.

. In so concluding, we specifically express that we have pretermitted discussion of the Pratts’ responsive argument that the annuity is neither a donation mortis causa nor dona-lion inter vivos and, on this basis, cannot ever be subject to "reduction,” as a discussion of the same is premature.