## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 1028 c/w 2020 CA 1029

SUCCESSION OF GERONIMO JI JAGA

CONSOLIDATED WITH

AMERICAN GENERAL LIFE INSURANCE COMPANY, SUCCESSOR TO
WESTERN NATIONAL LIFE INSURANCE COMPANY F/K/A AIG ANNUITY
INSURANCE COMPANY, SUCCESSOR TO AMERICAN GENERAL
ANNUITY INSURANCE COMPANY

VERSUS

JOJUYOUNGHI CLEAVER, AS SURVIVING SPOUSE AND AS NATURAL
TUTRIX OF THE MINOR CHILD, K.J.J.; LAILA MINJA, AS NATURAL
TUTRIX OF THE MINOR CHILD, T.G.J.; SHONA PRATT
AND HIROJI PRATT

Judgment rendered: __DEC 1 4 2021__

\* \* \* \* \*

On Appeal from the
Sixteenth Judicial District Court
In and for the Parish of St. Mary, State of Louisiana
No. 19232 c/w 128836

The Honorable Keith R. J. Comeaux, Judge Presiding

\* \* \* \* \*

Ronald E. Stutes
Baton Rouge, Louisiana

Attorney for
Plaintiffs/Defendants/Appellants
Shona Pratt, Hiroji Pratt, and Nikki
Michaux

Emily E. Eagan
New Orleans, Louisiana

Attorney for Defendant/Appellee
American General Life Insurance
Company

M. Janice Villarrubia
Baton Rouge, Louisiana

Attorney for
Plaintiff/Defendant/Appellee

_Guidry, J., concur in the result._

|                          | Jojuyounghi "Joju" Cleaver as Administratrix and as Agent under Specific Power of Attorney for Kayode Ji Jaga |
|--------------------------|------------------------------|
| Joseph A. Prokop, Jr. Baton Rouge, Louisiana | Attorney for Defendant/Appellee Jojuyounghi "Joju" Cleaver as Surviving Spouse of the Decedent |
| Mark R. Callender Baton Rouge, Louisiana | Attorney for Defendant/Appellee Glory William "Laila" Minja as Natural Tutor of the Minor Child, Tkumsah Geronimo Jaga |

\* \* \* \* \*

**BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.**

**HOLDRIDGE, J.**

This appeal in consolidated succession and concursus suits concerns the inclusion of an annuity in the active mass of the succession to satisfy the forced heirs' legitime and the surviving spouse's marital portion, the fractional amount of the marital portion calculation, the inclusion of non-cash assets as part of the legitime, and the denials of a motion for new trial, a motion to traverse the detailed descriptive list, and a motion to compel discovery.[1] Finding error, we reverse, vacate, and remand.

## FACTS AND PROCEDURAL HISTORY

Geronimo Ji Jaga, a/k/a Elmer G. Pratt ("the decedent"), died intestate on June 3, 2011, in Tanzania, Africa. At the time of his death the decedent was married to Jojuyounghi Cleaver ("Joju"). The decedent fathered five children: Kayode Ji Jaga ("Kayode"), who was born during the marriage of the decedent and Joju; Shona Pratt ("Shona") and Hiroji Pratt ("Hiroji"), who were born during the decedent's prior marriage; Nikki Michaux ("Nikki"); and Tkumsah Geronimo Jaga ("Tkumsah"), who was the child of the decedent and Glory William "Laila" Minja ("Laila").[2] Kayode and Tkumsah were both younger than twenty-three years old at the time of the decedent's death, and thus were forced heirs.[3]

One of the main issues in these appeals concerns an annuity that arose from a settlement agreement and release the decedent entered into on August 25, 2000,

---

[1] This court's review of the companion appeal, 2020 CA 1026 consolidated with 2020 CA 1027, can be found in a companion opinion also handed down this date. See **Succession of Jaga**, 2020-1026 c/w 2020-1027 (La. App. 1 Cir. __/__/21).

[2] According to the record, Nikki was born on July 20, 1970; Hiroji and Shona were born during the decedent's marriage to Linda Session, from whom he was divorced in 1995; Kayode was born on February 15, 2003; and Tkumsah was born on February 11, 2010. Joju and the decedent were married on September 12, 2002.

[3] Forced heirs include those descendants of the first degree who are younger than twenty-three years old when the decedent dies. See La. C.C. art. 1493(A).

3

with certain defendants and their insurer in a personal injury claim he had filed.[4]

Pursuant to the settlement agreement, the defendants' insurer made a "qualified assignment" within the meaning of Section 130(c) of the Internal Revenue Code to American General Assignment Corporation ("AGAC") of its obligation to make certain periodic payments due in the future in settlement of the decedent's claim.[5] To fund its obligation, AGAC purchased an annuity from American General Annuity Insurance Company ("AGAIC").[6] The annuity provided for certain guaranteed payments to be made monthly to the decedent during his lifetime with several yearly lump sum payments.[7] Further, as part of the settlement agreement, if the decedent died before July 15, 2020, any payments due through that date were to be paid in equal portions to Shona and Hiroji, who had been designated as beneficiaries of the annuity.

---

[4] The parties do not dispute that the settlement agreement exists, but the settlement and release are not in the record. Details of the settlement agreement and release are taken from the pleadings in the record and references to the settlement in the annuity. For instance, the petition in the concursus suit does not name the defendants and insurer with whom the decedent settled, but simply refers to them as "certain defendants and their insurer." The concursus petition alleges that the decedent entered into the settlement agreement on or about August 25, 2000.

[5] 26 USCA § 130, I.R.C. § 130, states, in pertinent part, generally, that: "Any amount received for agreeing to a qualified assignment shall not be included in gross income to the extent that such amount does not exceed the aggregate cost of any qualified funding assets." Section (c) states, in pertinent part: "For purposes of this section, the term 'qualified assignment' means any assignment of a liability to make periodic payments as damages (whether by suit or agreement) … on account of personal injury…."

[6] Over the two decades during which the events and litigation in these cases have occurred, the annuity company has changed names. The original annuity company, AGAIC, was succeeded by AIG Annuity Insurance Company, which was formerly known as Western National Life Insurance Company ("Western National"). Western National was succeeded by American General Life Insurance Company effective January 1, 2013. See **Cleaver v. Western National Life Insurance Co.**, 2014-0972 (La. App. 1 Cir. 7/28/15), 180 So.3d 406, 409 n.2, writ denied, 2015-1619 (La. 10/30/15), 179 So.3d 617.

[7] The monthly payments were $9,000.00 from August 15, 2000, until July 15, 2005; $10,000.00 from August 15, 2005, through July 15, 2010; $11,500.00 from August 15, 2010, through July 15, 2015; and $5,063.00 from August 15, 2015, through July 15, 2020. Lump sum payments of $100,000.00 were to be made in 2002, 2007, 2012, and 2017.

On November 28, 2011, Joju (on her own behalf)[8] and the decedent's major children, Shona, Hiroji, and Nikki, filed a joint petition to open his succession in the Sixteenth Judicial District Court for the Parish of St. Mary, which was docketed as case number 19232. On October 5, 2012, Joju filed a petition in the succession suit for recognition of her rights as a surviving spouse. She sought, among other issues, to include the annuity in the active mass of the succession in a revised detailed descriptive list in order to calculate the marital portion, to which she alleged she was entitled, and to calculate the forced heirs' legitime. Laila, as the natural tutor of her minor child, Tkumsah, filed a petition to assert his rights as an alleged forced heir. Shona and Hiroji intervened in the suit to assert their rights. On May 10, 2013, Joju was appointed the administrator of the succession after the prior administrator, Stuart Hanlon, resigned. Joju also filed a motion to require Nikki and Tkumsah to prove paternity.

A trial was held on September 3, 2015, to address whether Nikki established she was the decedent's daughter, whether the annuity should be included in the active mass of the decedent's succession, and whether Joju was entitled to the marital portion. The parties offered testimony from Joju and Nikki and introduced exhibits, including the annuity. They also stipulated that Tkumsah was a forced

---

[8] Joju is a party in the underlying suits in several capacities: in her individual capacity; as the succession administrator; and on behalf of Kayode, who was a minor when these suits were initially filed.

On July 21, 2021, Joju filed a motion to substitute Kayode as a party plaintiff instead of her as his tutor because he had reached the age of majority on February 15, 2021. See La. C.C.P. arts. 683, 821; Uniform Rule—Courts of Appeal, Rule 2-9. Joju also requested that she be "substituted in his place as his specific power of attorney for all matters related to this litigation" as he is a full-time college student in Arizona. She attached a notarized document signed on May 24, 2021, in Georgia, which was entitled "SPECIFIC POWER OF ATTORNEY" whereby Kayode gave her the authority to act for him in this litigation. Pursuant to La. C.C. art. 2985, "A person may represent another person in legal relations as provided by law or by juridical act. This is called representation." Louisiana Code of Civil Procedure article 694 provides in pertinent part that "[a]n agent has the procedural capacity to sue to enforce a right of his principal, when specifically authorized to do so." Therefore, we grant Joju's motion to substitute Kayode as a party plaintiff for herself as tutor and to substitute herself for Kayode in these lawsuits pursuant to her specific power of attorney.

5

heir of the decedent. After issuing reasons for judgment on November 4, 2015, the district court signed a judgment on December 7, 2015, finding that: Nikki and Tkumsah were the decedent's children; Tkumsah was an heir of the decedent; all of the decedent's property and funds were separate property; the annuity should be included in the active mass calculation and was his separate property; and Joju was entitled to a marital portion of one-fifth (1/5) of the decedent's estate.

Pursuant to Laila's motion for new trial, the judgment was amended on February 8, 2016, to more specifically identify the annuity included in the calculation of the active mass of the decedent's succession as "American General annuity policy number 403,994," which listed the decedent as the payee; to define Joju's marital portion as a usufruct for life of one-fifth (1/5) of the decedent's net estate; and to require Joju to post a bond.[9]

Meanwhile, on December 6, 2012, Joju, on behalf of Kayode and herself, filed a separate suit for his legitime and her marital portion against Western National Life Insurance Company (Western National), which at that time was the successor company to AGAIC,[10] in the Nineteenth Judicial District Court for East Baton Rouge Parish.[11] Later, Shona and Hiroji were added as defendants. In pertinent part, Joju alleged in her petition that the decedent had purchased an annuity from AGAIC from proceeds he received from a civil rights lawsuit. The

---

[9] Shona, Hiroji, and Nikki appealed from the February 2016 judgment. This court dismissed the appeal because the judgment at issue was not a final judgment over which this court had subject matter jurisdiction. **Succession of Jaga**, 2016-1291 (La. App. 1 Cir. 9/15/17), 227 So.3d 325, 328. This court found that the judgment was not a final judgment for purposes of immediate appeal because it determined only certain issues in the succession, none of which was conclusive of the proceeding. **Id.** Consequently, the judgment was a partial judgment that may be appealed only if authorized by La. C.C.P. art. 1915. **Id.** The judgment did not fall within any of the categories of partial judgments subject to immediate appeal under Article 1915(A), and it was not designated as a final judgment by the court after an express determination that there is no just reason for delay pursuant to La. C.C.P. art. 1915(B). **Id.**

[10] See footnote 3.

[11] The suit was docketed as case number 617,512. The Nineteenth Judicial District Court filings appear in the record as exhibits to the later-filed concursus petition.

petition further alleged that although Kayode was a forced heir, he was not a named beneficiary of the annuity and he had not received anything due to the decedent's death. Accordingly, the petition alleged that as a forced heir, Kayode was entitled to receive his legitime, and, in calculation of the legitime, he was entitled to demand collation of any gifts which impinged on the legitime. Laila, on behalf of Tkumsah, filed a petition for intervention, alleging he was a forced heir and making similar allegations regarding his legitime.

In response, in pertinent part, Shona and Hiroji filed a peremptory exception raising the objection of no cause of action and a dilatory exception raising the objection of prematurity.[12] After a hearing, the district court sustained the exception raising the objection of no cause of action, pretermitted the other exceptions as moot, and dismissed Joju's and Laila's claims on behalf of their children with prejudice.[13] Joju and Laila appealed. **Cleaver v. Western National Life Insurance Co.**, 2014-0972 (La. App. 1 Cir. 7/28/15), 180 So.3d 406, 408-09, writ denied, 2015-1619 (La. 10/30/15), 179 So.3d 617. (TR 129)

On appeal, this court determined that the district court erred in sustaining the exception raising the objection of no cause of action insofar as Joju and Laila had stated in their petitions a cause of action for the annuity to be included in the active mass of the succession. **Cleaver**, 180 So.3d at 413. This court then concluded that, to the extent that Joju and Laila on their children's behalf were asserting a cause of action for reduction of the annuity proceeds directly against Shona and Hiroji, such potential claims were premature as there had been no calculation of

---

[12] Shona and Hiroji also filed a peremptory exception raising the objection of nonjoinder of a party, a dilatory exception raising the objection of lack of procedural capacity, and a declinatory exception raising the objection of lack of personal jurisdiction.

[13] The judgment was initially signed on December 16, 2013, but it lacked proper decretal language as it did not dismiss Kayode's and Tkumsah's claims; therefore, the judgment was amended on August 26, 2014, to dismiss their claims with prejudice.

the succession mass. **Id.** at 413-14. Thus, this court determined that Joju and Laila could not establish at that time that they were entitled to a reduction due to an impingement on their children's legitime. **Id.** This court vacated that part of the district court's judgment sustaining Shona and Hiroji's exception raising the objection of no cause of action and dismissing Joju's and Laila's claims with prejudice. **Id.** at 414-15. This court also rendered judgment maintaining Hiroji and Shona's dilatory exception raising the objection of prematurity and dismissing Joju and Laila's claims against them without prejudice.[14] **Id.** at 415. The matter was remanded for further proceedings.[15] **Id.**

While Joju's suit was on appeal, in response to her action against it, American General Life Insurance Company (AGLIC), a successor insurance company to the original issuer of the annuity, filed a concursus suit in the Sixteenth Judicial District Court, which was docketed as case number 128836, on August 31, 2015, naming as defendants Joju (in her own behalf and as tutor of her minor child), Laila (as tutor of her minor child), Shona, and Hiroji. AGLIC alleged it had initially been paying the annuity payments to Shona and Hiroji following the decedent's death, but it began retaining one-half of the annuity payments in January of 2014 and all of the annuity payments in August of 2015. The district court gave AGLIC leave to deposit all currently held annuity payments and all future annuity payments into the registry of the district court. In addition to cross claims against their co-defendants (Shona and Hiroji), Joju and Laila, on behalf of

---

[14] This court noted that Joju and Laila had raised the preliminary and identical issues in the related pending succession suit, leading to the possibility of inconsistent opinions and that the need for review could be mooted by further action of the district court where the succession suit was pending. **Cleaver**, 180 So.3d at 414. This court noted its authority under La. C.C.P. art. 2164 to render whatever judgment is just, legal, and proper upon the record on appeal, in holding that Joju's and Laila's claims should be dismissed, but on the basis of prematurity. **Id.**

[15] The district court's judgment dismissing with prejudice Joju and Laila's claims against Western National (the successor to the original annuity company at that time) was also vacated. **Cleaver**, 180 So.3d at 415.

8

their minor children, filed reconventional demands against AGLIC. On October 25, 2016, the succession suit was consolidated with the concursus suit.

On October 22, 2018, the district court signed an order approving the compromise of Laila's claims on behalf of Tkumsah against AGLIC. On November 15, 2018, the district court signed a judgment dismissing Laila's claims on behalf of Tkumsah against AGLIC with prejudice pursuant to the settlement agreement between Laila and AGLIC.

On November 25, 2018, the district court held a bench trial in the consolidated actions and later issued reasons for judgment. According to the reasons, based on the second detailed descriptive list, the parties agreed that the "net succession" was valued at $1,475,241.33. They also agreed that Kayode and Tkumsah were forced heirs. The district court referred to its earlier ruling that the annuity was part of the decedent's estate. The district court stated that after the decedent's death, annuity payments totaling $675,000.00 were made to Shona and Hiroji. Beginning August 15, 2015, the annuity payments were deposited into the registry of the court, and, as of September 30, 2018, the annuity payments in the registry totaled $292,794.99. The remaining annuity payments to be made totaled $111,386.00. As of September 30, 2018, the funds in the in the registry of the court totaled $293,379.03. The district court noted that it had previously ruled on the traversal of the second detailed descriptive list.

Following the issuance of the reasons for judgment and before the signing of the judgment, Nikki, Shona, and Hiroji filed a motion to compel discovery on July 24, 2019. In the motion, they stated that they served a request for admission, an interrogatory, and a request for production of documents on Joju and Laila on July 11, 2019. They then alleged that Joju and Laila (as tutors for their minor children) responded, admitting having reached a settlement with AGLIC to their

9

reconventional demand, but objecting to the discovery requests on the grounds that the requested information and documents were subject to a confidentiality agreement. Nikki, Shona, and Hiroji contended that without the information requested, it was impossible to calculate whether the forced heirs' legitime was impinged because the settlement funds must count toward the legitime. The record contains the motion to compel, but it does not contain the requested discovery or the responses objecting to the discovery.

The district court ultimately entered a "**FINAL JUDGMENT**" in the consolidated actions on July 26, 2019. The judgment provided as to the succession suit that: the legitime of the forced heirs had been impinged; Joju should be paid the marital portion of $295,048.26 in usufruct; Joju had the usufruct of the 2007 Lexus automobile and was able to continue to use the vehicle or pay the estate the net value less the usufruct value; and costs of the succession were to be paid from the succession account and any remaining funds should be applied equally to, and distributed for, the legitime of the forced heirs. As to the concursus suit, the judgment provided that: the forced heirs had a direct claim as to the concursus proceeds and the future payments due from the annuity to satisfy the impingement of their legitime; the funds amounting to $292,794.99 contained in the concursus should be applied and distributed to the legitime of the forced heirs; the future payments from the annuity of $111,386.00 should be applied equally and distributed for the legitime of the forced heirs; and any deficiency in the satisfaction of the legitime was the responsibility of Shona and Hiroji due to the annuity payments they had received after decedent's death and before the concursus was filed so that judgment was granted against Shona and Hiroji, *in solido*, in favor of $19,872.73 to each forced heir.

10

Nikki, Shona, and Hiroji filed a motion for new trial and to amend the judgment. They alleged that the district court omitted from the judgment an asset they referred to as "the Hanlon Papers," which was valued at $65,000.00, and which consisted of attorney Stuart Hanlon's work papers for the decedent's appeals in his personal injury suit in California. The district court held a hearing on the motion to compel and the motion for new trial and signed judgments denying both on August 29, 2019.

The district court also signed a "**JUDGMENT OF POSSESSION (Final)**" in the succession suit on August 29, 2019. The judgment, among other things, recognized Nikki, Shona, Hiroji, Kayode, and Tkumsah as Geronimo's descendants; recognized Kayode and Tkumsah as forced heirs to receive a legitime of $295,048.25 each, less prior disbursements of $15,000.00 each and subject to the usufruct of the surviving spouse's marital portion; recognized Joju as the surviving spouse in necessitous circumstances and awarded her the usufruct for life of $295,048.25 in assets in the following manner: $278,355.25 in cash, $13,000.00 as one-fifth the value of "the Hanlon Papers," and $3,693.00 as one-fifth the value of the 2007 Lexus, with the naked ownership of each item split equally among the five heirs; required Joju to post a bond in the amount of $236,038.60; and ordered the remainder of money in the succession account after payment of debts to be divided equally between Kayode and Tkumsah.

Shona, Hiroji, and Nikki (hereinafter collectively referred to as "the appellants") filed a motion for appeal from the final judgment rendered on July 26, 2019; the August 29, 2019 judgment of possession; the August 29, 2019 judgment denying the motion for new trial; and the August 29, 2019 judgment denying the motion to compel discovery. The district court granted the motion, and this court designated the appeal of the July 26, 2019 judgment as 2020 CA 1028 consolidated

11

with 2020 CA 1029.[16] The appeal of the August 29, 2019 judgment of possession was designated as 2020 CA 1026 consolidated with 2020 CA 1027. This court consolidated all of the appeals on May 26, 2021.[17] Our review of the appeal in 2020 CA 1026 consolidated with 2020 CA 1027 can be found in a companion opinion to this appeal also handed down this date. See **Succession of Jaga**, 2020-1026 c/w 2020-1027 (La. App. 1 Cir. __/__/21).

The appellants raise the following assignments of error: 1) the district court erred in including the value of the annuity payments in the estate; 2) the district court erred in holding that the marital portion was a usufruct over one-fifth of the succession, rather than one-sixth; 3) the district court erred in including the value of the annuity payments in the calculation of the marital portion; 4) the district court erred in including only one-fifth of the value of the Lexus in the distribution of assets into the marital portion; 5) the district court erred in failing to include the non-cash assets (the Lexus vehicle and "the Hanlon papers") as part of the legitime after including them in the calculation of the legitime; 6) the district court erred in denying the motion for a new trial on issues in the final judgment after failing to include the value of the non-cash assets as part of the legitime; 7) the district court erred in denying the motion to traverse the detailed descriptive list as to "the Hanlon papers;" and 8) the district court erred in denying the motion to compel discovery.

---

[16] When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to review of the final judgment appealed. See **Russell v. Cantrelle**, 2019-0815, 2018-1762 (La. App. 1 Cir. 5/11/20), 303 So.3d 1081. 1085 n.5. The August 29, 2019 judgments denying the motion for new trial and denying the motion to compel are interlocutory rulings that can be reviewed in the appeal of the July 26, 2019 final judgment. See **Songy v. Bayou Bridge Pipeline, LLC**, 2020-0860 (La. App. 1 Cir. 2/19/21), 320 So.3d 434, 439 n.7, writ denied, 2021-00412 (La. 5/11/21), 315 So.3d 869; **Woodlands Homeowner's Association, Inc. of Hammond v. Arvello**, 96-0517 (La. App. 1 Cir. 12/20/96), 694 So.2d 386, 387.

[17] Because the judgments in these appeals are so intertwined, the briefs submitted in both appeals are identical. The records in all the appeals are the same with the exception of volumes 4 and 5 in 2020 CA 1026 and 2020 CA 1027 and volume 4 in 2020 CA 1028 and 2020 CA 1029.

## STANDARD OF REVIEW

Where there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo*. **Ogea v. Merritt**, 2013-1085 (La. 12/10/13), 130 So.3d 888, 895 n.6.

## ANNUITY

We will first consider appellants' assignments of error concerning the annuity. Appellants in Assignments of Error Numbers 1 and 3 contend that the district court erred in including the value of the annuity payments in the decedent's estate insofar as the forced heirs' legitime and the marital portion are concerned. Initially we will consider whether the value of the annuity should be included in calculating the forced heirs' legitime.

Louisiana Revised Statutes 22:912(B)(1), governing the exemption of annuity proceeds from claims of creditors and others, states:

> The lawful beneficiary, assignee, or payee, including the annuitant's estate, of an annuity contract shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant or the person effecting the contract, or the estate of either, and against the heirs and legatees of either person, **saving the rights of forced heirs,** and the proceeds and avails shall also be exempt from all liability for any debt of the beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.[18]

(Emphasis and footnote added).

---

[18] Louisiana Revised Statutes 22:912(D) provides:

(1) The provisions of Subsections A, B, and C of this Section shall apply:

(a) Whether or not the right to change the beneficiary is reserved or permitted in the policy, contract, or education savings account depositor's agreement.

(b) Whether or not the policy, contract, or education savings account depositor's agreement is made payable to the person whose life is insured, to his estate, or to the estate of an annuitant or to the estate of an education savings account owner if the beneficiary, assignee, or payee shall predecease the person.

(2) This Subsection shall not be construed so as to defeat any policy or contract provision which provides for disposition of proceeds in the event the beneficiary, assignee, or payee shall predecease the insured, annuitant, or education savings account owner.

Forced heirs have a right to receive a certain percentage of the decedent's estate, known as the forced portion or the legitime, pursuant to La. C.C. arts. 1493 *et seq.* Depending on the number of forced heirs, the amount of the legitime will be either one-fourth or one-half of the decedent's estate. La. C.C. art. 1495. In this case, there are two forced heirs such that the amount of the legitime will be one-half of the decedent's estate. The remaining portion of the decedent's estate is referred to as the "disposable portion." **Id.** In order to determine the disposable portion of the estate, the total value or active mass of the succession must be calculated, pursuant to La. C.C. art. 1505(A), which provides:

### Art. 1505. Calculation of disposable portion on mass of succession

(A) To determine the reduction to which the donations, either *inter vivos* or *mortis causa,* are subject, an aggregate is formed of **all property belonging to the donor or testator at the time of his death**; the sums due by the estate are deducted from this aggregate amount; to that is fictitiously added the property disposed of by donation *inter vivos* within three years of the date of the donor's death, according to its value at the time of the donation.[19]

(Emphasis and footnote added).

The process by which the aggregate value of the decedent's *inter vivos* donations is added to the aggregate value of the decedent's estate at the time of death, for the purpose of calculating the active mass of the succession (and in turn calculating the value of the legitime—at one-half or one-fourth thereof), has been called fictitious collation. **Succession of Fakier**, 541 So.2d 1372, 1378 (La. 1988). After the active mass of the succession is determined and the disposable portion is calculated, donations *mortis causa* thereafter may be reduced to satisfy the forced heirs' legitime. See La. C.C. art. 1507. Further, if the property of the estate is not sufficient to satisfy the legitime, the forced heirs may then bring an

---

[19] Louisiana Civil Code article 1505(A) was amended by 2020 La. Acts, No. 19, to move the language, "the sums due by the estate are deducted from this aggregate amount," from Paragraph B to Paragraph A.

action for reduction against donees of any *inter vivos* donations made within three years of the decedent's death. See La. C.C. art. 1508.

Forced heirs also have a right to receive an equal share of the decedent's estate as that received by other heirs pursuant to actual collation. Actual collation is the supposed or real return to the mass of the succession which an heir makes of property that he received in advance of his share or otherwise, in order that such property may be divided together with other effects of the succession. La. C.C. art. 1227. Forced heirs' right to demand actual collation "only applies with respect to gifts made within the three years prior to the decedent's death, and valued as of the date of the gift." La. C.C. art. 1235. While donations both *mortis causa* and *inter vivos* may be subject to a claim for reduction where a forced heir's legitime has been impinged, only donations *inter vivos* are subject to a forced heir's claim for actual collation. **Succession of Fakier**, 541 So.2d at 1383. In **Succession of Fakier**, the supreme court found that the annuities were not subject to actual collation because they were not *inter vivos* donations. 541 So.2d at 1383. The supreme court concluded that the annuities were not *inter vivos* donations because ownership of the annuities was never transferred by the owner and the proceeds were payable to the beneficiaries only upon the annuitant's death. **Id**. However, the court in **Fakier** did not determine whether the value of the annuities should be fictitiously collated for the purpose of calculating the active mass of the succession and the corresponding amount of the legitime under La. C.C. art. 1505.[20] **Id**. at 1379-80.

---

[20] **Succession of Fakier** was decided in 1988, before the amendment of La. C.C. art. 1235 in 1996 in response to the changes in the forced heirship law. See 1996 La. Acts, 1st Ex.Sess., No. 77, § 1; see also **Heck v. Heck**, 2008-0112 (La. App. 1 Cir. 10/31/08), 998 So. 2d 187, 190.

15

Pursuant to La. R.S. 22:47(17), an annuity is classified as a form of insurance.[21] It is described as "[a] contract sold by insurance companies that pays an income benefit for the life of a person, for the lives of two or more persons, or for a specified period of time, or a contract that may provide for a series of payments to be made or received at regular intervals at the direction of the contract holder." La. R.S. 22:47(17).[22] However, annuity contracts are generally recognized as investments, rather than as insurance. **In re Succession of Thomas**, 2010-0576 (La. App. 1 Cir. 12/29/10), 2010 WL 5549035 at *1 (unpublished opinion), writ denied, 2011-0409 (La. 4/8/11), 61 So.3d 690; **Succession of Halligan**, 2003-1168 (La. App. 1 Cir. 9/17/04), 887 So.2d 109, 113, writ denied, 2004-2619 (La.12/17/04), 888 So.2d 875.

To determine whether the annuity in this case was part of the decedent's estate at the time of his death, we must consider the annuity contract. The annuity,

---

[21] Louisiana Revised Statutes 22:47 was renumbered from La. R.S. 22:6 by 2008 La. Acts, No. 415, § 1, effective January 1, 2009.

[22] Louisiana Civil Code article 2778 defines an annuity contract in pertinent part as "an agreement by which a party delivers a thing to another who binds himself to make periodic payments to a designated recipient. The recipient's right to these payments is called an annuity." An annuity contract is also defined in La. R.S. 22:912(B)(2) as follows:

The term "annuity contract" shall include any contract which:

(a) Is issued by a life insurance company licensed to provide the contract in the state in which it was issued at the time of issue.

(b) States on its face or anywhere within the terms of the contract that it is an "annuity" including but not limited to an immediate, deferred, fixed, equity indexed, or variable annuity, irrespective of current pay status or any other definition of "annuity" in Louisiana law.

(c) Provides the contract owner the ability to defer United States income taxes on any interest earned and not distributed to the owner.

(d) Transfers some risk of financial loss to the insurance company for financial consideration.

(e) Was approved as an annuity contract by the Department of Insurance of the state in which it was issued prior to issue.

Louisiana Revised Statutes 22:912 was renumbered from La. R.S. 22:647 by 2008 La. Acts, No. 415, § 1, eff. Jan. 1, 2009.

entitled "SINGLE PREMIUM IMMEDIATE ANNUITY POLICY," was signed on July 15, 2000.[23] The application is titled, "STRUCTURED SETTLEMENT ANNUITY APPLICATION." The consideration for the annuity policy was the application and the payment in advance of a single premium payment.

The policy states that it "is a legal policy between the owner and [AGAIC]." The payment schedule and the application list the owner as AGAC and the decedent as the measuring life and the annuitant/payee.[24] The annuity defines owner "as stated in the application unless later changed and endorsed on this policy. Subject to any endorsements to the contrary, the Owner will have the right to receive every benefit and exercise every right the policy confers or the Company allows." The annuity states that the beneficiary "as named in the application or later changed by the Owner, will receive, subject to the terms of this policy, any payments which are due after the death of the Annuitant."[25] The application lists Shona and Hiroji as beneficiaries.

The policy provides for the "**Death of the Annuitant (Other than a Joint Annuitant**" in pertinent part as follows:

> If the Annuitant dies before the minimum number of guaranteed income payments have been paid, we will continue making payments at least as rapidly as they were being made before death until the minimum number of guaranteed payments have been paid. . . . Otherwise, such payments will be made to the Beneficiary. Income payments to a Beneficiary will begin after we receive due proof of the Annuitant's death.

---

[23] The annuity was introduced into evidence at the September 2015 hearing, and the stipulation of facts filed for the 2018 trial states that the annuity agreement in the record is a true copy of the original document.

[24] It appears that pursuant to the settlement agreement, the defendant's insurer would remain the owner of the policy and make payments to the beneficiaries tax-free on account of the personal injury to the decedent.

[25] As to the change of owner and beneficiary, the annuity provides in pertinent part that "The Owner or Beneficiary may be changed by the Owner unless the previous designation provides otherwise. The change may be made by submitting a written request to the company's Home Office."

To the extent permitted by law, proceeds will not be subject to any claims of a Beneficiary's creditors.

The payment schedule states, "IF THE MEASURING LIFE DIES PRIOR TO PAYMENT OF ALL INSTALLMENTS DURING THE GUARANTEED PERIOD, ANY REMAINING PAYMENTS DUE SHALL BE PAID **IN ACCORDANCE WITH THE SETTLEMENT AGREEMENT,** AS THEY BECOME DUE."[26] (Emphasis added).

The record in this case does not show that the decedent owned the funds used to make the single premium payment to buy the annuity, such that the consideration for the annuity was property belonging to his estate. Moreover, the record does not show the amount of the single premium payment when it was made. The decedent did not own the annuity and it was a vehicle to deliver payments to the decedent and his named beneficiaries as required by the structured settlement. The settlement from which the annuity arose is not a part of the record in this case.[27] Thus, nothing in the record shows that the annuity and the consideration for the annuity were property belonging to the decedent's estate at

---

[26] The annuity contains the following provisions regarding the death of a beneficiary:

Unless otherwise provided in the Beneficiary designation:

1. If any Beneficiary dies before the Annuitant, that Beneficiary's interest will pass to any other Beneficiaries according to their respective interests;

2. If payments are being made to the last surviving Beneficiary, and such Beneficiary dies before all guaranteed payments have been made, such payments will be paid:

A. As stated in the application or later changed by endorsement; otherwise

B. To the estate of such Beneficiary.

[27] Joju in her appellate brief cites La. R.S. 9:2713.1(14) for its definition of a structured settlement. However, the Louisiana Structured Settlement Protection Act was effective July 1, 2020, and will not be applied in this case. See La. Acts 2019, No. 260, § 3.

the time of his death. Moreover, the annuity contract was between AGAC and AGAIC, and the decedent was not a party to the contract, but merely the payee.

In determining that the annuity was part of the decedent's estate, the district court in its November 4, 2015 and December 26, 2018 reasons for judgment recognized that the annuity was funded by a structured settlement in favor of the decedent. However, in deciding to include the amount of the annuity in the decedent's estate, the district court relied on cases where the annuities were purchased with money that the decedents owned, such that the consideration for the annuities was property belonging to their estates. See **Succession of Rabouin**, 201 La. 227, 9 So.2d 529 (1942); **Succession of Pedrick**, 207 La. 640, 21 So.2d 859 (1945); see also **T.L. James & Co., Inc. v. Montgomery**, 332 So.2d 834 (La. 1975).

In **Rabouin**, the supreme court held that the unpaid balance of the consideration for an annuity contract at the time of the annuitant's death must be considered as part of the annuitant's estate in order to compute the disposable portion of his estate under the law of forced heirship. 9 So.2d at 529, 531. According to the court, the payment to the beneficiary of an annuity contract was "a payment of a fund which belonged to the annuitant during his lifetime." **Rabouin**, 9 So.2d at 530.

In **T.L. James**, the supreme court recognized that the contractual beneficiary of the decedent's employment-related profit sharing and pension plan receives full ownership of any proceeds designated for him; however, the court also found that the beneficiary had the obligation to account to any complaining forced heir or spouse in community if his receipt of the proceeds violated ether the forced heir's legitime or the spouse's community ownership rights. 332 So.2d at 855. The supreme court stated that the benefits to the employee of the employer's

19

contributions were in the nature of additional remuneration to the employee and was therefore earned income and thus property. **Id**. at 841. The court determined that once the employer's contributions were made, they became irrevocably dedicated to the employee and with this particular employee due to his length of service and pay, vested in him at the time of his death. **Id**. The supreme court concluded: "The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right." **Id**. at 851.[28]

In **Pedrick**, the supreme court followed **Rabouin** to hold that the balance of the consideration which the annuitant paid for an annuity contract, not repaid to him before his death, formed a part of the annuitant's estate and thus was subject to the inheritance tax. 21 So.2d at 860-61. The supreme court stated, "A contract of the nature involved in this suit is an investment pure and simple." **Id**. at 860. The supreme court commented that holding otherwise "would make it possible to convert an entire estate into contracts of this nature and thereby circumvent and defeat taxes due the State and the rights of forced heirs." **Id**. at 861.

None of the cases concerning annuities considered by the district court or in the jurisprudence involve annuities based on structured settlements.[29] These cases are all distinguishable from the instant case because the annuities in the cited cases

---

[28] **T.L. James** was decided before the 1981 amendment of La. C.C. art. 1505(D) to state that employer and employee contributions under any plan of deferred compensation and any benefits payable by reason of retirement under plans qualified under Sections 401 or 408 of the Internal Revenue Code should not be subject to the claims of forced heirs. 1981 La. Acts, No. 909.

[29] In their brief, appellants refer to a report containing opinions from Robert E. Steele, a national expert on structured settlement annuities; however, this report is not part of the record, nor did Robert testify at trial. Appellate briefs are not part of the record, and an appellate court has no authority to consider on appeal facts referred to in argument of counsel, in such briefs, or in exhibits containing matters that are not in the pleadings or evidence, and as such, are outside the record. **Niemann v. Crosby Development. Co., L.L.C.**, 2011-1337 (La. App. 1 Cir. 5/3/12), 92 So.3d 1039, 1045. Thus, we are precluded from considering the report from Robert or the argument presented in the parties' appellate briefs regarding his report or opinions. Joju as administratrix of the succession and Laila on behalf of her child filed motions to strike the report and all references to it from consideration in this appeal. Since we are not considering this material, the motions to strike are moot.

were funded with money owned by the decedent, such that the forced heirs should not be deprived of those funds that belonged to the annuitant during his lifetime, unlike this case. Furthermore, from the record we are unable to determine if the decedent was ever the owner of any funds used to purchase the annuity. In this case, the record does not show that the annuity was used to deprive the rights of forced heirs by changing the character of an in-hand asset. In fact, when the settlement was confected and the annuity purchased, the decedent had no forced heirs at that time and therefore could not have deprived any forced heirs of any rights.

In the prior appeal in this case, this court considered La. R.S. 22:912(B) in its review of exceptions filed by the beneficiaries of the annuity. In **Cleaver**, this court reviewed whether Joju and Laila, on behalf of the forced heirs, stated a cause of action in their petitions based on their contention that La. R.S. 22:912(B)(1) gave them a direct right of reduction against the assets of the annuity in order to satisfy the forced heirs' legitime. **Cleaver**, 180 So.3d at 410-11. This court also considered their alternative contention that the annuity was subject to their claim for fictitious collation as to any gifts which impinged on the legitime pursuant to La. C.C. Articles 1504 and 1508.[30] **Id.**

Initially we must recognize that this court in the earlier appeal of the district court's judgment was reviewing only the allegations in Joju's and Laila's petitions and accepting them as true, as is appropriate in ruling upon the objection of no

---

[30] Louisiana Civil Code article 1504 provides that an action to reduce excessive donations may be brought only after the death of the donor and only by a forced heir, the heirs or legatees of a forced heir, or an assignee of any of them who has an express conventional assignment of the right to bring the action. Louisiana Civil Code article 1508 provides that when the property of the estate is insufficient to satisfy the forced portion, a forced heir may recover the amount needed to satisfy his legitime from the donees of *inter vivos* donations made within three years of the date of the decedent's death, beginning with the most recent donation and proceeding successively to the most remote.

cause of action. **Cleaver**, 180 So.3d at 410.[31] The **Cleaver** opinion begins with this statement: "This is an appeal filed on behalf of two minor children from a judgment of the trial court sustaining the defendants' exception of no cause of action and dismissing the children's claims asserting an interest in an annuity policy **owned by their deceased father**." **Id**. at 408 (Emphasis added). This court was considering whether the objection should be granted "only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief." **Id**. at 412, citing **Pierrotti v. Johnson**, 2011-1317 (La. App. 1 Cir. 3/19/12), 91 So.3d 1056, 1062. This court specifically stated, "Joju alleged in her petition that the decedent had purchased an annuity from American General Annuity, later named as Western National, from proceeds he received from a civil rights lawsuit."[32] **Cleaver**, 180 So.3d at 409 (Footnote omitted). However, this allegation is not supported by the actual annuity introduced into evidence at the trial of this matter, which does not show that the decedent was the owner of or that he purchased the annuity in question. Therefore, this court's conclusions in **Cleaver** must be considered with the caveat in mind that

---

[31] The purpose of the peremptory exception raising the objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. **Damond V. Marullo**, 2019-0675 (La. App. 1 Cir. 6/22/20), 307 So.3d 234, 241, writ denied sub nom. **Damond v. Marullo**, 2020-01243 (La. 3/23/21), 312 So.3d 1104. No evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pled facts in the petition must be accepted as true. **Damond**, 307 So.3d at 241. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Id**.

[32] Joju's petition states in paragraph 3, "On or about July 15, 2000, [the decedent] ... purchased an annuity from [AGAIC] containing the proceeds he received from a civil rights suit filed in California under Policy Number 403,994 making the policy have an incident of ownership by the decedent." This court stated that in Laila's petition for intervention, she alleged that Tkumsah was a forced heir of decedent and that "pursuant to LSA-R.S. 22:912(B), beneficiary designations for annuities are limited in that beneficiary designations may not transfer ownership rights reserved for forced heirs." **Cleaver**, 180 So.3d at 409. Laila's petition for intervention specifically states, "The Annuity arose from the settlement of a lawsuit filed by the Annuitant in California."

22

they are based on allegations in Joju's and Laila's petitions which were not borne out by the facts in evidence at trial as included in the record before us.

In **Cleaver**, this court stated that, pursuant to **Succession of Fakier**, the district court's decision to sustain the peremptory exception raising the objection of no cause of action was correct to the extent that Joju and Laila alleged that they were entitled to actual collation of the annuity proceeds to fulfill the legitime. This court did not specifically determine whether the annuity in this case was an *inter vivos* donation.[33] **Cleaver**, 180 So.3d at 412-13. However, once the annuity in this case was introduced into evidence, it is apparent that it could not be the basis of an *inter vivos* donation as the decedent did not own it during his lifetime and the proceeds were payable to the beneficiaries only in the event of his death. See La. C.C. art. 1468;[34] **Succession of Fakier**, 541 So.2d at 1383. Further, the annuity was not a donation *mortis causa* since "[a] disposition mortis causa may be made only in the form of a testament authorized by law." See La. C.C. art. 1570. Accordingly, without a donation, there can be no right of reduction. However, even if we would consider this a donation, this court would be forced to classify it as a donation *inter vivos*, which was made in 2000 as part of a settlement agreement when Shona and Hiroji were named as beneficiaries and there were no forced heirs at the time. In that case, there would be no claim for actual collation pursuant to La. C.C. art. 1235 because the gift was not made within the three years prior to the decedent's death.

---

[33] Notably, in a footnote, this court stated, "[W]e specifically express that we have pretermitted discussion of [Shona and Hiroji's] responsive argument that the annuity is neither a donation *mortis causa* nor donation *inter vivos* and, on this basis, cannot ever be subject to 'reduction,' as a discussion of the same is premature." **Cleaver**, 180 So.3d at 414 n. 11.

[34] "A donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." La. C.C. art. 1468.

After determining that there was no cause of action for actual collation of the annuity proceeds, this court considered whether Joju and Laila on behalf of their children had stated a cause of action for including the amount of the annuity in the calculation of the active mass of the succession for purposes of La. C.C. art. 1505(A). In reversing the district court, this court stated, "Here, the parties do not cite, nor have we found, any statutory or jurisprudential authority unequivocally establishing that annuities are exempt from the calculation of the succession mass for purposes of LSA-C.C. art. 1505." **Cleaver**, 180 So.3d at 412.[35] This court also stated that in reviewing the objection of no cause of action, it was "giving effect to the rights granted to forced heirs by LSA-R.S. 22:912(B)(1)." **Id.** at 413.[36]

Joju (on behalf of Kayode) argues that if this court had chosen not to apply La. R.S. 22:912(B) to this case, it could have done so in the earlier **Cleaver** appeal. This argument overlooks the fact that because **Cleaver** concerned an objection of no cause of action, this court accepted the allegations of Joju's petition as true and considered the annuity to be owned by the decedent. This court did not consider whether the annuity could be included in the active mass where the annuity was created as part of a settlement agreement. As part of that settlement, it appears that the decedent did not own the funds used to purchase the annuity, but agreed to receive payments from the annuity. He also agreed as part of the settlement that his named beneficiaries would receive payments from the annuity in the event of his death.

---

[35] Annuities are not excluded in the manner that life insurance premiums and proceeds and employment-related deferred compensation plans are under La. C.C. art. 1505(C) and (D) respectively.

[36] In **Cleaver,** this court also considered the objection of prematurity to the extent that Joju and Laila on behalf of their children were asserting a direct cause of action for reduction of the annuity against Hiroji and Shona. 180 So.3d at 413. This court concluded that "while plaintiffs **may** have a cause of action for reduction regarding the annuity and its proceeds in the future, these claims are premature at this time" because the active mass of the succession and the legitime had not yet been determined. **Id.** at 414 (Footnote omitted.).

Joju contends that La. R.S. 22:912(B) does not distinguish between an annuity purchased by a decedent and an annuity purchased to fund a structured settlement. Similarly, Laila contends that the decedent's ownership of the annuity is not determinative because La. R.S. 22:912(B) includes the "annuitant or the person effecting the contract, or the estate of either, and against the heirs and legatees of either person" as those who are subject to the rights of forced heirs. Yet, forced heirs' inheritance rights are protected only insofar as the property of the decedent is concerned. With annuities, the courts were concerned with a decedent using an annuity as a vehicle to deprive his forced heirs of his property. See **Pedrick**, 21 So.2d at 861. In this case, the decedent did not own the annuity, he did not fund the annuity, and he could not change the beneficiaries without the approval of the owner. Additionally, there is no indication that the decedent was trying to deprive his forced heirs of the funds deriving from the annuity because they were not born when the annuity was created and the beneficiaries were designated. There were no rights of forced heirs in existence at the time the beneficiaries were designated since at that time there were no forced heirs. The annuity was part of a settlement agreement between the decedent and other parties. At that time, the decedent was free to enter any agreement and to give his property to whomever he selected. This court nor the Louisiana law of forced heirship has any authority to overturn a settlement properly entered into by the decedent more than three years prior to his death in another state at a time when he had no forced heirs.

While La. R.S. 22:912(B) uses the phrase "saving the rights of forced heirs," their rights to the decedent's estate are set forth under La. C.C. arts. 1494 and 1495. In considering what the rights of forced heirs are, they are entitled to their legitime based on the active mass of the succession, as discussed earlier; however,

25

their legitime consists of a portion of the decedent's estate. Louisiana Civil Code article 1505(A) refers to "all property belonging to the donor or testator at the time of his death," to which is fictitiously added "the property disposed of by donation *inter vivos* within three years of the date of the donor's death." The estate of the deceased is defined in pertinent part by La. C.C. art. 872, which states that "estate ... means the property, rights and obligations that a person leaves after his death...."[37] As stated above, the record does not show that the decedent owned the funds used to purchase the annuity. He did not own the funds from the annuity until he actually received each payment. His right was only to receive payments while he was alive, and, after his death, these payments would go to his designated beneficiaries until the guaranteed portion of the annuity was paid. The right to these payments was established in 2000 when the annuity agreement was perfected and the settlement agreement was entered into. This court has no authority to change the terms of a settlement agreement over twenty years after the settlement agreement was perfected.

The appellees also contend that the decedent's estate includes his rights, and they characterize the decedent's interest in the annuity as a right to the income stream of the annuity that he used to satisfy his economic needs. Joju contends the annuity is part of the decedent's patrimony and therefore is part of his estate.[38]

---

[37] A succession is defined in pertinent part by La. C.C. art. 871 as "the transmission of the estate of the deceased to his successors."

[38] Joju relies on **Succession of Seal**, 2015-0855 (La. App. 1 Cir. 12/23/15), 185 So.3d 791, 793, wherein this court was considering the issue of whether a surviving spouse was entitled to a marital portion and had to compare the patrimonial assets of the deceased with those of the survivor. This court stated that "The civil law concept of patrimony includes the total mass of existing or potential rights and liabilities attached to a person for the satisfaction of his economic needs." **Id.** at 793. **Seal** concerned whether a widow's use of the family home should have been considered in the value of her patrimonial assets to calculate whether she was entitled to the marital portion. **Id.** at 793-94. The citation in **Seal** came from a community property partition case, **Depner v. Depner**, 478 So.2d 532, 533 (La. App. 1 Cir. 1985), writ denied, 480 So.2d 744 (La. 1986).

However, according to the Louisiana Civil Law Treatise, "The mass of the succession includes only heritable patrimonial rights that belonged to the deceased. Accordingly, life insurance policies and bonds payable to designated beneficiaries do not form part of the succession." Yiannopulous, Property, 2 La. Civ. L. Treatise § 198 (4th ed. 2001) (Footnotes omitted). In this case, as discussed above, the decedent had the right to each payment from the annuity as it became due during his lifetime, but this right was not heritable. Based on the language of the annuity contract, we cannot say that the funds supporting that annuity were part of the decedent's estate, and therefore, the forced heirs did not have any rights to them. Even if we were to hold that those funds were owned by the decedent, we would be compelled to find that they were donated to the beneficiaries at the time the annuity and settlement agreement were made more than three years prior to the decedent's death. Assignment of Error Number 1 has merit and the district court erred in including the annuity's value in the active mass of the succession to calculate the forced heirs' legitime.

After considering Assignment of Error Number 1 and determining that the value of the annuity should not be included in the calculation of the active mass of the succession to determine the forced heirs' legitime, we must consider Assignment of Error Number 3, wherein the appellants contend that the district court erred in including the value of the annuity to calculate the marital portion. Louisiana Civil Code article 2432 provides, "When a spouse dies rich in comparison with the surviving spouse, the surviving spouse is entitled to claim the marital portion from the succession of the deceased spouse."[39] Louisiana Civil Code article 2434 states, in pertinent part: "The marital portion is one-fourth of the succession in ownership if the deceased died without children, the same fraction in

---

[39] The parties stipulated that Joju was in necessitous circumstances when the decedent died.

27

usufruct for life if he is survived by three or fewer children, and a child's share in such usufruct if he is survived by more than three children."

Because the decedent did not own the annuity, it is not part of his estate. Moreover, while La. R.S. 22:912(B) "sav[es] the rights of forced heirs," it does not refer to the surviving spouse insofar as her marital portion might be concerned. Thus, even if the annuity's value were properly included in the calculation of the active mass of the succession for the purpose of calculating the forced heirs' legitime, the surviving spouse is not given rights to the annuity in preference to the beneficiaries of the annuity contract. Thus, Assignment of Error Number 3 has merit and the district court erred in including the value of the annuity payments in the calculation of the marital portion.

Because we have determined that the district court erred in including the annuity in the active mass of the succession and we reverse that ruling, we must vacate the district court's judgments that are based upon inclusion of the annuity in the active mass of the succession. The judgments that must be reversed and vacated in this appeal are the July 26, 2019 final judgment and the August 29, 2019 judgment denying the motion for new trial. We also vacate the August 29, 2019 judgment denying the motion to compel.[40] Because we are vacating these judgments, we pretermit the remaining assignments of error.

## CONCLUSION

For the above and foregoing reasons, based on our finding that the district court erred in including the value of the annuity in the active mass of the succession, we reverse and vacate the July 26, 2019 final judgment (2020 CA 1028 c/w 2020 CA 1029) and the August 29, 2019 judgment denying the motion for new trial (2020 CA 1028 c/w 2020 CA 1029). We vacate the August 29, 2019

---

[40] The judgment denying the motion to compel is vacated and remanded to the district court in accordance with this opinion.

28

judgment denying the motion to compel (2020 CA 1028 c/w 2020 CA 1029). We remand this matter for further proceedings consistent with this opinion. Costs of this appeal are assessed against Jojuyounghi "Joju" Cleaver and Glory William "Laila" Minja.

**MOTIONS TO STRIKE DENIED AS MOOT. MOTION TO SUBSTITUTE GRANTED. JUDGMENTS REVERSED AND VACATED; REMANDED.**